UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAAD BIN KHALID**, *Plaintiff,* v. **CHARLES H. KABLE**, *et al,* *Defendants.* | Case No.  **1:21-cv-02307-CRC** Hon.  Christopher R. Cooper |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

### INTRODUCTION

Before this case began and prior to Saad Bin Khalid finding himself on the No Fly List in 2019, he imagined moving with his wife to the United States as newlyweds. Years later, with a child now and no longer recently married, Khalid must—through his counsel—beg the federal government for a "one time waiver" that would allow him to travel[1] to the United States in March, as his professional responsibilities require. It is a shocking departure from what Khalid thought life with his young family would be like.

Callous to this, the federal government seeks an open-ended stay that is likely to last years. For Khalid, this is a bridge too far. An innocent person who has not been charged with any crime, the No Fly List has upended his world, imperiled his ability to make a living, and stranded his family overseas. He needs, desperately, for this case to be adjudicated.

---

[1] Earlier this month, on January 19th, Mr. Khalid's counsel contacted DOJ lawyers to implore them to allow Mr. Khalid to fly to the United States in March. Plaintiff's counsel has provided four itineraries to the Department of Justice and have asked them to ensure that he is permitted to board one of them to return to this country. Plaintiff has done so in an effort to obviate the need for emergency relief.

1

But this Court need not, and is in fact explicitly precluded from, balancing these kinds of prudential considerations for either Khalid or the federal government's benefit. Though Defendants neglect to let the Court know, the Supreme Court has already held that this Court cannot—through a stay—impose an exhaustion requirement on Khalid's APA claim.

This Court is prohibited by the Supreme Court's decision in *Darby v. Cisneros* and the plain text of the Administrative Procedures Act ("APA") to require Plaintiff to exhaust DHS TRIP. Under the APA, Congress can require—via explicit text—that a litigant first exhaust an administrative process prior to suing. Federal agencies can too, if they issue an agency rule. But for DHS TRIP, neither of these things have happened.

For APA claims, when Congress and the agencies do nothing to require exhaustion, this Court cannot override the APA to impose its own exhaustion requirement. *See Darby v. Cisneros*, 509 U.S. 137, 154, 113 S. Ct. 2539, 2548, 125 L. Ed. 2d 113 (1993) ("Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become "final" under § 10(c)" of the APA).

Nine years after encountering FBI agents who interrogated him as a minor, searched his phone, and his person, with Khalid finally about to start the process of vindicating his rights, the Government asks for a stay that will likely freeze the case for years. But those administrative procedures are not the exclusive means of Khalid challenging the Government's actions here, and under straightforward Supreme Court precedent Khalid cannot be required to exhaust them.

Meanwhile, Khalid began DHS TRIP two and half years ago, and the process is basically still in its early stages. A stay will almost certainly take years and will likely resolve nothing. The Court should deny it.

## BACKGROUND

Saad Bin Khalid was a minor when he was interrogated by the FBI in 2012. Complaint ¶¶ 62-69. Apparently based on that interrogation as well as an association of some sort that the FBI will not reveal any details of, the FBI placed Mr. Khalid on the No Fly List, a small subset (more of an annotation) of the broader terrorism watchlist. *See* Exhibit A (DHS TRIP response). Mr. Khalid now challenges his placement on the watchlist and his No Fly List annotation on both Substantive and Due Process grounds as well as the Religious Freedom and Restoration Act and the APA.

Although none of his claims depend on his filing a DHS TRIP application to resolve travel-related harm, *see* Argument § I, below, Khalid later filed a DHS TRIP application at the request of the Government in July 2019. *See* Complaint ¶ 88. That application went nowhere. The Government initially told him when he applied that the process would take a minimum of 8 months. *Id.* ¶ 103. On April 6, 2020, approximately 9 months later, the Government responded with information Mr. Khalid already knew—that he was on the No Fly List. *Id.* ¶ 104. That same day, Mr. Khalid requested additional information, which DHS TRIP allows him to do. *Id.* at ¶ 105. Mr. Khalid received that additional information on Tuesday of *last week*, January 25, 2022—nearly two years later. Exhibit A – Letter from DHS TRIP.[2]

Before the DHS TRIP process is complete,[3] Khalid would have to provide DHS with additional information, which could take another year or two for the Government to review—

---

[2] Plaintiff intends to move for leave to file Exhibit A under seal. As Defendants' motion suggests, "the nature of the information" warrants discretion. Dkt. 10 at 4.

[3] The DHS TRIP notification he received incorrectly suggests that he could elect to treat this as a final determination and appeal the determination directly to the Court of Appeals under

and with this case stayed, the Government would of course be in no rush. Then Khalid would be able to appeal that determination to the TSA Administrator. Presumably, after another year or two, the TSA Administrator would make some kind of decision that has no chance of resolving this case because being on the watchlist affects listees like Khalid in ways unrelated to TSA-overseen travel. *See* Complaint Dkt. 1 at ¶110 ("Because it is unlikely his immigratin petitions [for his wife, the mother of his child], Khalid and his family have begun discussing having Mr. Khalid return to the United States without them.").

## ARGUMENT

**I.  There is no reason to stay this case because, under *Darby*, Khalid is not required to exhaust the DHS TRIP process to bring any, much less, all, of his claims.**

The Government's Motion to Stay this case is based on its incorrect theory that Khalid's case requires exhaustion of the DHS TRIP process.

Nothing in 49 U.S.C. § 44926 indicates that DHS TRIP is the exclusive method for removing individuals from the No Fly List. Under *Darby v. Cisneros*, 509 U.S. 137, 146 (1993), an "exhaustion requirement must be "unambiguous so that aggrieved parties would know precisely what administrative steps were required before judicial review would be available." This is particularly true when "the question of the adequacy of the administrative remedy ... was for all practical purposes identical with the merits of appellees' lawsuit." *Gibson v. Berryhill*, 411 U.S. 564, 575 (1973). And the majority of courts that have looked at this issue have

---

49 U.S.C. § 46110. That is, of course, false, as 49 U.S.C. § 46110 only permits appeals of decisions of the Department of Transportation as well as TSA and FAA, none of whom have even been ***involved*** in the process yet. *See Ege v. U.S. Dep't of Homeland Sec.,* 784 F.3d 791, 797 (D.C. Cir. 2015) ("The agencies whose actions are reviewable under section 46110, however, have no "authority to decide whose name goes on the No–Fly List.").

found that DHS TRIP exhaustion is not a prerequisite to challenging the federal watchlist program. *See also Mohamed v. Holder*, 995 F. Supp. 2d 520 (E.D. Va. 2014); *Crooker v. TSA*, 323 F. Supp. 3d 148, 157 (D. Mass. 2018); *Kovac v. Wray*, 363 F. Supp. 3d 721, 747 (N.D. Tex. 2019); *El Ali v. Barr*, 18-cv-2415, 2020 WL 4051866, at *13 (D. Md. July 20, 2020).

So challenging the existence of the watchlist and the No Fly List (which are not even programs under DHS, but rather, managed by the FBI), the methods for placing individuals on the watchlist, the standard for inclusion, whether the program is instituted and run in a discriminatory manner, and even the adequacy of the DHS TRIP remedy does not first require Khalid to seek redress through DHS TRIP before bringing suit. He could have brought this challenge without ever seeking redress through DHS TRIP.

The Government points to two cases in response. Both are wrongly decided, but just as importantly, neither provide reason to stay Khalid's case here.

*Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013), reasoned that requiring exhaustion is "prudent," (not necessary) because it "will promote judicial efficiency" and allow the TSC "to use its expertise to try to resolve" claims. *Id.* at 595. But the Sixth Circuit's "optimism that exhaustion will aid the decision-making process" has turned out to be unfounded and has since been rejected by other courts. *See El Ali*, 473 F. Supp. 3d at 506. The procedures are too sparse to support an exhaustion requirement. *See Mohamed v. Holder*, 995 F. Supp. 2d 520, 534-35 (E.D. Va. 2014); *El Ali v. Barr*, 473 F. Supp. 3d 479, 506 (D. Md. 2020). "It is difficult to see how exhaustion of DHS TRIP would significantly assist the Court in adjudicating or resolving [Khalid's] claims." *Mohamed*, 995 F. Supp. 2d at 534.

In any event, Shearson's result was expressly only because no APA claim was involved. 725 F.3d at 594 n.1. As *Darby* makes clear, prudence alone cannot allow a Court to

5

require exhaustion of an APA challenge to agency action to a program, including a challenge based on a program's unconstitutionality. 509 U.S. at 153-54 ("[T]he exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA. But where the APA applies, an appeal to "superior agency authority….").[4] is a prerequisite to judicial review only when expressly required by statute. And the APA grants a right to review agency action, for, among many other reasons, constitutional challenges to the agency action. 5 U.S.C. § 706(2)(B). So *Shearson* would not apply in this case even if correctly decided.

In *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019), the Ninth Circuit declared that the plain language of 46 U.S.C. § 46110 required an as applied substantive due process challenge to the decision of the TSA not to remove the plaintiffs from the No Fly List to be heard for the first time by the Court of Appeals. *Id.* at 390-91. The Ninth Circuit did not discuss an exhaustion requirement, attempt to distinguish *Darby* in any way, or even cite a single case in support of its holding. *Id.* Even then, *Kashem* only stated the District Court lacked jurisdiction over the as-applied substantive due process claim over the No Fly List. *See id.* at 391 n.16 ("the plaintiffs' procedural due process claims lies in the district court" because "[t]hose claims challenge the sufficiency of the revised DHS TRIP procedures administered by the TSC, not the substantive decision in the final TSA order").

Here, in marked contrast, Khalid is challenging his inclusion both on the watchlist and the No Fly List (actually just a flight ban annotation to Khalid's watchlist status). Khalid is

---

[4] The other exception, "when an agency rule requires appeal before review and the administrative action is made inoperative pending that review," is inapplicable here for a number of reasons, but most simply that, on the face of the DHS TRIP response, appeal is not necessary for judicial review, *see* Exhibit A (stating that Khaled can obtain judicial review should he choose not to continue to pursue the process, although incorrectly stating that review would be under 46 U.S.C. § 46110.

6

challenging not the decision of the TSA Administrator—which of course has not even occurred yet. Instead, he is challenging the decision of the FBI, via its Terrorism Screening Center alter ago, to place him on the list. Khalid is challenging both the substance of TSC's decision as well as the procedures used to arrive at a decision. Khalid's challenge is facial and as applied. *See Gibson*, 411 U.S. at 575 (no need to exhaust a facial procedural due process challenge to agency action). And Khalid brings an APA challenge that, under *Darby*, cannot require exhaustion.

## II.    A stay would cause extraordinary harm to Mr. Khalid.

Since there is no exhaustion requirement, there is no reason to stay the case while the DHS TRIP process goes on. *See Mohamed v. Holder,* 995 F. Supp. 2d 520, 533 (E.D. Va. 2014) ("A federal court cannot require a plaintiff to exhaust administrative remedies before seeking judicial review of a final agency action under the APA where neither the relevant statute nor an agency rule imposes such a requirement."). But even if there were, the proper remedy would be to dismiss, not stay the case. That would allow Khalid to appeal to the D.C. Circuit rather than to wait years before having a chance to vindicate his constitutional rights. And it would be especially appropriate here, where, if the Government was correct, review after exhaustion would lie solely within the Court of Appeals anyway.

And years it may take. In *Long v. Garland*, 15-cv-1642 (E.D. Va.), Saadiq Long's motion for a preliminary injunction was denied—incorrectly—for failure to exhaust DHS TRIP. Dkt. 12 at 33 (Feb. 4, 2016). Deciding to just go through the process rather than appeal, Long agreed to stay his complaint on March 31, 2016, in order to complete the DHS TRIP process. That process finally ended on April 23, 2019—nearly three years later—when TSA finally

7

affirmed the FBI/Screening Center's decision not to remove him from the No Fly List on a process that was Congressionally delegated to DHS. After that, the Government moved to dismiss Long's case and the Court declared that only part of Long's claims were covered by Section 46110. *See* Dkt. 59 (Apr. 2, 2020). When Long went before the Fourth Circuit to challenge even that partial application of Section 46110, the Government removed him from the No Fly List after Long filed his brief and claimed the appeal was moot. *See Long v. Pekoske*, 20-01406 (4th Cir.), Dkts. 27-28 (suggesting mootness) (Sept. 23, 2020); 29 (Oct. 5, 2020) (motion to dismiss based on mootness).[5]

Meanwhile, the harm caused by Khalid's continued placement on the No Fly List and the broader watchlist for an additional two years is extraordinary. This includes the loss of major business opportunities (some contingent on his ability to travel on flights within the United States, others based on his inability to obtain a security clearance) as well as the continued inability to immigrate and obtain citizenship for his wife and children. *See* Exhibit B - Khalid declaration.

And Khalid's attorneys—who have represented in federal court 11 other individuals beside Khalid that were on the No Fly List (including Mr. Long), all of whom have since been removed—know how someone actually gets removed from the Government watchlist. It is not to hold off on litigation: As Mr. Long found out, holding off on litigation while the DHS TRIP process resolved itself was a fruitless endeavor. It is by going forward with the litigation and putting the Government in a position to decide to strategically moot part or all of a case by removing the plaintiff from the No Fly List. Indeed, of the 11 other individuals Khalid's

---

[5] Oral argument in that case took place on January 26, 2022. At oral argument, counsel for the Government conceded that all of Plaintiffs' claims related to the broader watchlist were not moot and belonged exclusively in the district court.

lawyers have represented who were removed from the No Fly List, *not a single one* was removed by regular DHS TRIP procedures.

## CONCLUSION

There is no reason to stay this case while a process that is ultimately tangential to Mr. Khalid's claims, and not necessary for those claims to be brought, takes years to conclude just because it might happen to moot some of the claims in this case against Mr. Khalid. A number of things might moot some of the case—Mr. Khalid could pass away while on the No Fly List, or the Government might see the light and give up the unconstitutional and ineffective watchlisting system entirely. But Courts do not refuse to hear cases on the off chance that the case might resolve itself over time if it declines to act.

In any case, *Darby* determines the outcome here. Because neither Congress nor federal agencies required DHS TRIP to be exhausted, Khalid can proceed with his case prior to DHS TRIP's completion. The Court should deny the Motion to Stay.


January 31, 2022                              Respectfully submitted,


                                              */s/ Lena F. Masri*
                                              Lena F. Masri (VA 93291)
                                              lmasri@cair.com
                                              Gadeir I. Abbas (VA 81161) *α*
                                              gabbas@cair.com
                                              Justin Sadowsky (D.C. 977642)
                                              jsadowsky@cair.com
                                              Zanah Ghalawanji (MI 977642) ß
                                              zghalawanji@cair.com
                                              CAIR LEGAL DEFENSE FUND
                                              453 New Jersey Ave., SE
                                              Washington, DC 20003
                                              Telephone:  (202) 742-6420

Facsimile (202) 379-3317

*Attorneys for Plaintiffs*

*α Licensed in VA, not D.C. Practice limited to federal matters.*
*ß Licensed in MI, not D.C. Practice limited to federal matters.*