IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Saad Bin Khalid,

    Plaintiff,

v.

Merrick Garland, *et al.*,

    Defendants.

Civil Action No. 1:21-cv-02307 (CRC)

**REPLY IN SUPPORT OF MOTION TO SUSPEND DEADLINE TO RESPOND TO THE COMPLAINT AND FILE JOINT STATUS REPORT IN 90 DAYS**

**INTRODUCTION**

The Government's motion reasonably seeks to align proceedings in this case with the underlying administrative process by suspending the complaint response deadline and having the parties file a joint status report instead. As the Government explained, Plaintiff has been given 60 days, or until March 26, 2022, to provide any additional information relevant to his No Fly List status or to request an extension of time. The Government simply proposes that, after that date, the parties file a joint status report updating the Court on the status of Plaintiff's DHS TRIP redress application—including whether Plaintiff has submitted further information—and to propose any further proceedings at that time, including, if appropriate, a briefing schedule. This approach is tailored to the ongoing administrative process and is well within this Court's authority. And it is particularly warranted because at the end of the redress process, any final TSA order will be subject to review exclusively in the Court of Appeals.

Plaintiff strenuously opposes an indefinite stay of this case—but that is not what the Government requests. Rather, the Government proposes that the parties update the Court on a definite timeline—90 days—that would permit the parties and the Court to take heed of imminent administrative developments. This request is consistent with other courts' approach to watchlist cases, and the Court should grant it here.

**ARGUMENT**

**I.    The Government Does Not Seek An Indefinite Stay.**

Contrary to Plaintiff's assertions, the Government does not seek an indefinite stay or to "freeze this case for years." Pl.'s Opp. at 2, ECF No. 11. Rather, as explained in the Government's motion, the U.S. Department of Homeland Security ("DHS") has given Plaintiff 60 days to submit further information relevant to his No Fly List status in response to DHS TRIP's January 25 letter,

1

or to request an extension. Defs.' Mot. at 2, ECF No. 10. That 60-day clock is running, and it ends on March 26, 2022. The Government simply proposes that the parties file a joint status report after that deadline to update the Court on the status of Plaintiff's DHS TRIP redress application and to propose any further proceedings, including, if appropriate, a briefing schedule at that time.

Indeed, should Plaintiff not submit further information or request an extension, then, on March 26, 2022, his current No Fly List status would become a final order subject to exclusive review in the Court of Appeals.[1] 49 U.S.C. § 46110. Alternatively, should Plaintiff instead submit further information, the Government would then consider that information and, at the conclusion of the process, the TSA Administrator would issue a final decision maintaining Plaintiff on, or removing him from, the No Fly List. Again, such an order would be reviewable only in the Court of Appeals. 49 U.S.C. § 46110.

If Plaintiff is removed from the No Fly List, there will be no need for judicial review because Plaintiff will have obtained his desired relief. While Plaintiff discounts this possibility, *see* Pl.'s Opp. at 9, No Fly List plaintiffs in other cases have in fact been removed while the redress process was pending, *see, e.g.*, *Kovac v. Wray*, 449 F. Supp. 3d 649, 652 (N.D. Tex. 2020) (noting that plaintiff was removed from the No Fly List). And if Plaintiff instead remains on the No Fly List, the TSA Administrator would explain that result based on the full record before the agency— including any further information that Plaintiff may yet submit to contest his No Fly List status. Currently, such information is not in the record, and TSA has not had an opportunity to consider

---

[1] Plaintiff incorrectly asserts that TSA has not yet been involved in Plaintiff's redress process, and that his current No Fly List determination thus could not become a final TSA order. Pl.'s Opp. at 3–4 n.3 (citing *Ege v. DHS*, 784 F.3d 791, 797 (D.C. Cir. 2015)). *Ege*, however, was decided before the DHS TRIP redress process was substantially revised in 2015, such that the TSA Administrator is now "solely responsible for issuing a final order maintaining a traveler on the No Fly List." *Kashem v. Barr*, 941 F.3d 358, 391 (9th Cir. 2019) (discussing 2015 changes).

it. For these precise reasons, the Sixth Circuit in *Shearson* dismissed the claims of a traveler who failed to exhaust her administrative remedies through DHS TRIP, *see Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013) (recognizing that creation of a record through the redress process "will help a court better determine the issues" and thus "promote judicial efficiency"), and other courts have required plaintiffs to complete the revised DHS TRIP procedures before conducting further judicial review of their TSDS claims, *see Mokdad v. Holder*, No. 13-cv-12038, Order, ECF No. 43 (E.D. Mich. Dec. 16, 2015); *see also Latif v. Holder*, No. 3:10-cv-750-BR, Case Mgmt. Order, ECF No. 152 (D. Or. Oct 3, 2014); *Fikre v. FBI*, No 3:13-cv-899, Order, ECF No. 57 (D. Or. Jan 14, 2015); *Tarhuni v. Holder*, No. 3:13-cv-001, Orders, ECF Nos. 79, 86 (D. Or. Oct. 3, 2014 and Dec. 23, 2014).

      Plaintiff's contention that the redress process will take years to complete ignores the substance of the Government's request, which asks for a joint status report in 90 days, not a years-long stay. Moreover, the ball is currently in Plaintiff's court: should he wish to accelerate the TRIP Redress process, he may do so by submitting any further information expeditiously, and, again, if he declines to submit anything the administrative process will be complete on March 26, 2022. While Plaintiff contends his redress application has gone "nowhere," Pl.'s Opp. at 3, that is also not the case. Pursuant to his application, Plaintiff has already received (1) confirmation of his No Fly List status; (2) notice of the specific criteria under which he was placed on the No Fly List; and (3) an unclassified, non-privileged statement of the factual basis for his status, consistent with law enforcement and national security interests. *See* Pl.'s Opp., Ex. A, ECF No. 11-1. He now has an opportunity to contest his status through the provision of his own information without this Court needing to insert itself in the administrative process at this premature juncture.

it. For these precise reasons, the Sixth Circuit in *Shearson* dismissed the claims of a traveler who failed to exhaust her administrative remedies through DHS TRIP, *see Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013) (recognizing that creation of a record through the redress process "will help a court better determine the issues" and thus "promote judicial efficiency"), and other courts have required plaintiffs to complete the revised DHS TRIP procedures before conducting further judicial review of their TSDS claims, *see Mokdad v. Holder*, No. 13-cv-12038, Order, ECF No. 43 (E.D. Mich. Dec. 16, 2015); *see also Latif v. Holder*, No. 3:10-cv-750-BR, Case Mgmt. Order, ECF No. 152 (D. Or. Oct 3, 2014); *Fikre v. FBI*, No 3:13-cv-899, Order, ECF No. 57 (D. Or. Jan 14, 2015); *Tarhuni v. Holder*, No. 3:13-cv-001, Orders, ECF Nos. 79, 86 (D. Or. Oct. 3, 2014 and Dec. 23, 2014).

    Plaintiff's contention that the redress process will take years to complete ignores the substance of the Government's request, which asks for a joint status report in 90 days, not a years-long stay. Moreover, the ball is currently in Plaintiff's court: should he wish to accelerate the TRIP Redress process, he may do so by submitting any further information expeditiously, and, again, if he declines to submit anything the administrative process will be complete on March 26, 2022. While Plaintiff contends his redress application has gone "nowhere," Pl.'s Opp. at 3, that is also not the case. Pursuant to his application, Plaintiff has already received (1) confirmation of his No Fly List status; (2) notice of the specific criteria under which he was placed on the No Fly List; and (3) an unclassified, non-privileged statement of the factual basis for his status, consistent with law enforcement and national security interests. *See* Pl.'s Opp., Ex. A, ECF No. 11-1. He now has an opportunity to contest his status through the provision of his own information without this Court needing to insert itself in the administrative process at this premature juncture.

it. For these precise reasons, the Sixth Circuit in *Shearson* dismissed the claims of a traveler who failed to exhaust her administrative remedies through DHS TRIP, *see Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013) (recognizing that creation of a record through the redress process "will help a court better determine the issues" and thus "promote judicial efficiency"), and other courts have required plaintiffs to complete the revised DHS TRIP procedures before conducting further judicial review of their TSDS claims, *see Mokdad v. Holder*, No. 13-cv-12038, Order, ECF No. 43 (E.D. Mich. Dec. 16, 2015); *see also Latif v. Holder*, No. 3:10-cv-750-BR, Case Mgmt. Order, ECF No. 152 (D. Or. Oct 3, 2014); *Fikre v. FBI*, No 3:13-cv-899, Order, ECF No. 57 (D. Or. Jan 14, 2015); *Tarhuni v. Holder*, No. 3:13-cv-001, Orders, ECF Nos. 79, 86 (D. Or. Oct. 3, 2014 and Dec. 23, 2014).

Plaintiff's contention that the redress process will take years to complete ignores the substance of the Government's request, which asks for a joint status report in 90 days, not a years-long stay. Moreover, the ball is currently in Plaintiff's court: should he wish to accelerate the TRIP Redress process, he may do so by submitting any further information expeditiously, and, again, if he declines to submit anything the administrative process will be complete on March 26, 2022. While Plaintiff contends his redress application has gone "nowhere," Pl.'s Opp. at 3, that is also not the case. Pursuant to his application, Plaintiff has already received (1) confirmation of his No Fly List status; (2) notice of the specific criteria under which he was placed on the No Fly List; and (3) an unclassified, non-privileged statement of the factual basis for his status, consistent with law enforcement and national security interests. *See* Pl.'s Opp., Ex. A, ECF No. 11-1. He now has an opportunity to contest his status through the provision of his own information without this Court needing to insert itself in the administrative process at this premature juncture.

In any case, if the parties and the Court still have concerns about the timing of any final TSA decision, that is not a reason to deny the Government's motion. Instead, such timing concerns can properly be addressed in the joint status report filed after Plaintiff's March 26, 2022 deadline—*i.e.*, once the parties and the Court know whether Plaintiff has submitted further information, and if so, the nature and volume of such information. At that stage, the parties will have a better understanding of the time needed for a final TSA decision (if any), and thus be in the best position to propose relevant further proceedings.

In short, the Government's request for suspension of the complaint response deadline and a joint status report in 90 days is a reasonable request tailored to the status of the underlying administrative proceeding.

## II.   The Court Has Clear Authority To Grant The Government's Request.

The Supreme Court has held that "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Eng.-Speaking Union v. Johnson*, 353 F.3d 1013, 1021 (D.C. Cir. 2004) (recognizing the importance of "district courts['] need [of] powerful tools to manage their dockets"). Pursuant to this inherent authority, this Court has the power to grant the Government's request to suspend a current deadline and require the parties to file a joint status report in 90 days.

In response, Plaintiff contends that under principles of jurisdictional exhaustion he "is not required to exhaust the DHS TRIP process to bring any, much less, all, of his claims." Pl.'s Opp. at 4. But that argument is beside the point. The Government has not argued that Plaintiff's claims

4

are subject to jurisdictional exhaustion. In order to adjudicate the present motion, the Court need only consider its inherent authority to manage its docket. *See Landis*, 299 U.S. at 254.

In any case, principles of *prudential* exhaustion counsel in favor of the Government's proposed approach. The prudential exhaustion doctrine is premised on "the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). "[E]ven where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context." *McCarthy*, 503 U.S. at 145. Prudential exhaustion is particularly appropriate where the underlying issue involves the agency's "discretionary power" or "special expertise." *Id.*; *see also Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (contrasting jurisdictional and prudential exhaustion).

Here, Congress has charged the Executive Branch with administering applications for redress made by individuals who are prohibited from boarding a flight, including because they are on the No Fly List. *See* Defs.' Mot. at 2–3; 49 U.S.C. § 44903(j)(2)(C)(iii)(I). The defendant agencies have special expertise in the highly fact-intensive inquiry of determining placement on the No Fly List, and Plaintiff does not dispute this in his opposition. Moreover, the Government is not asking the Court to abstain from hearing this case at this juncture or even to stay this case. Rather, it is simply asking the Court to permit the redress process to play out over the next 90 days so as to better inform this Court's eventual consideration of the merits of the case or, more likely, permit Plaintiff to refile his case in the Court of Appeals. Adjudicating this case prematurely

5

would result in the exact sort of waste of judicial resources and hindering of a coordinate branch of government that prudential exhaustion requirements exist to prevent.

### III. Plaintiff Will Not Be Materially Harmed By Allowing 90 Days For The Administrative Process To Proceed.

Plaintiff's argument that he will be materially injured by having "to wait years before having a chance to vindicate his constitutional rights," Pl.'s Opp. at 7, also does not pass muster.

First and foremost, as already explained, the Government requests that the Court grant the parties a period of 90 days—not a stay of years—in order to allow the Plaintiff "to submit any additional information he believes relevant to his No Fly List status" so that the Government may make a final and fully informed determination on his status.  Defs.' Mot. at 1.  In other words, the precise purpose of the relief the Government requests is to allow Plaintiff the opportunity to assert any arguments concerning his constitutional rights that he so desires and to allow the Government to consider those arguments.

Second, to the extent Plaintiff argues that he will be injured in the next 90 days by his inability to travel to the United States, those arguments are now moot.  The Government has developed policies and/or procedures that enable U.S. citizens or lawful permanent residents on the No Fly List to return to the United States from abroad, subject to certain requirements.[2]  On January 26, Plaintiff, through his counsel, sent a proposed itinerary to the U.S. Embassy in Islamabad, Pakistan for a return flight to the United States on March 7 in line with a 2019 flight guidance letter Plaintiff had received from the Embassy.  Five days later, late in the evening on January 31, the U.S. Embassy informed Plaintiff and his counsel that the relevant U.S. government offices had approved an itinerary for Plaintiff's return to the United States on March 7.

---

[2] The specific details of these policies and/or procedures constitute law enforcement sensitive information and sensitive security information.

Accordingly, Plaintiff's argument that he will be harmed by his inability to return to the United States, which forms much of the basis for his opposition to this motion and also the Complaint, should be rejected. *See, e.g.*, ECF No. 11-2 (Khalid Decl.) ¶¶ 6–7 ("I am currently a shareholder of Megabat Holdings and GS Marketplace. My shareholder agreement requires that I travel to the United States in order to receive 16% of the company's shares. My failure to return to the United States means that I will not receive the shares promised to me.");[3] ECF No. 1, Compl. ¶ 5 ("Mr. Khalid remains stranded abroad and has been unable to return to the United States, for nearly two years, due to his placement on the No Fly List."); *id.* ¶ 6 (Mr. Khalid "has lost several job opportunities due to his inability to return to the United States").

Finally, to the extent Plaintiff premises his opposition on his desire to have the D.C. Circuit adjudicate his complaint instead of this Court and therefore asserts that "the proper remedy would be to dismiss" this case, Pl.'s Opp. at 7, the Government's motion does not preclude that outcome. As the Government explained, "[s]hould Plaintiff fail to submit further information or request an extension within 60 days, the Government's present determination of No Fly List status would become a final order, likewise reviewable in the Court of Appeals pursuant to 49 U.S.C. § 46110." Defs.' Mot. at 5. Plaintiff asserts no reason that this Court should diverge from this statutorily mandated process. If Plaintiff does not have or chooses not to submit any further information, he may seek review in the Court of Appeals following this 60-day period of time.

---

[3] Mr. Khalid's declaration is not a proper unsworn statement. *See* 28 U.S.C. ¶ 1746 (requiring that an unsworn declaration contain "in substantially the following form: . . . If executed without the United States: 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)'"). Mr. Khalid's declaration lacks any references to the "laws of the United States of America," is undated, and contains neither an ink signature nor a verifiable electronic signature.

## CONCLUSION

For the foregoing reasons, the Government's request to suspend the complaint response deadline and require the parties to file a joint status report in 90 days should be granted. In the alternative, the Government requests a two-week extension of time to respond to the complaint.

Dated: February 1, 2022

BRIAN M. BOYNTON
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

/s/ *Matthew Skurnik*
MATTHEW SKURNIK, NY Bar No. 5553896
CHRISTOPHER D. EDELMAN, DC Bar No. 1033486
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 616-8188
Matthew.skurnik@usdoj.gov

*Counsel for Defendants*