## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Saad Bin Khalid, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-02307 (CRC) |
| | ) | |
| Merrick Garland; *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

DISCUSSION ...................................................................................................................... 2

I.     THE COURT LACKS JURISDICTION OVER THE COMPLAINT. ............................. 2

     A.    The Courts of Appeals Have Exclusion Jurisdiction Over Plaintiff's
          Claims. ................................................................................................................. 2

          1.    Plaintiff's Substantive Claims Directly Challenge, r Are
               Inescapably Intertwined With, An Order Of TSA. .................................... 3

          2.    Plaintiff's Procedural Claims Directly Challenge, Or Are
               Inescapably Intertwined With, An Order Of TSA. ....................................7

     B.    Plaintiff Lacks Standing to Assert His RFRA Claim ............................................ 9

II.    PLAINTIFF FAILS TO STATE A CLAIM. .................................................................. 10

     A.    Count I (Procedural Due Process) Should Be Dismissed. .................................... 10

          1.    A Mere "Impact" to "Travel-Related Liberty Interests" Does Not
               Suffice to State a Liberty Interest for a Procedural Due Process
               Claim. ...................................................................................................... 11

          2.    A Stigma Plus Claim Requires Widespread Dissemination. .................... 12

          3.    The Inability to Fly Is Not a Plus Factor in Plaintiff's Stigma Plus
               Claim. ...................................................................................................... 14

          4.    The Government Provided Adequate Process. .......................................... 15

               a.    This Court May Decide the Adequacy Of The Process At This
                    Stage. ........................................................................................... 15

               b.    DHS TRIP Provides Adequate Notice. ........................................ 15

     B.    Count II (Substantive Due Process) Should Be Dismissed. ................................. 18

          1.    There is No Fundamental Right to Travel by Airplane. ........................... 18

          2.    The No Fly List Does Not Significantly Interfere with Either
                Interstate or International Travel. ............................................................. 19

           3.    The No Fly List is Narrowly Tailored. .................................................... 20

     C.    Count III (APA) Should Be Dismissed .............................................................. 22

D.      Count IV (RFRA) Should Be Dismissed. ............................................................ 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Alasaad v. Nielsen*,
  No. 17-CV-11730-DJC, 2018 WL 2170323 (D. Mass. May 9, 2018) .................................. 10

*Amerijet Int'l, Inc. v. DHS*,
  43 F. Supp. 3d 4 (D.D.C. 2014) ............................................................................................ 2, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)* ............................................................................................................. 12

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ............................................................................................................... 23

*Califano v. Aznavorian*,
  439 U.S. 170 (1978) ......................................................................................................... 12, 19

*Capitol Hill Baptist Church v. Bowser*,
  496 F. Supp. 3d 284 (D.D.C. 2020) ...................................................................................... 25

*Clancy v. OFAC*,
  559 F.3d 595 (7th Cir. 2009) ................................................................................................ 12

*Cramer v. Skinner,*
  931 F.2d 1020 (5th Cir. 1991) .............................................................................................. 12

*Durso v. Napolitano,*
  795 F. Supp. 2d 63 (D.D.C. 2011) .......................................................................................... 2

*El Ali v. Barr,*
  473 F. Supp. 3d 479 (D. Md. 2020)* ............................................................................... 24, 25

*Elhady v. Kable,*
  391 F. Supp. 3d 562 (E.D. Va. 2019) ................................................................................... 10

*Elhady v. Kable,**
  993 F.3d 208 (4th Cir. 2021) ........................................................................................... 14, 19

*Fares v. Smith*,
  901 F.3d 315 (D.C. Cir. 2018) .............................................................................................. 17

*Fikre v. FBI,*
  35 F.4th 762 (9th Cir. 2022) ................................................................................................... 6

*Fraternal Ord. of Police Dep't of Corr. Lab. Comm. v. Williams,*
  375 F.3d 1141 (D.C. Cir. 2004)* ........................................................................................... 20

*Garcia v. Pompeo*,
No. 1:18-cv-01822 (APM), 2020 WL 134865 (D.D.C. Jan. 13, 2020) .................................. 13

*Grutter v. Bollinger*,
539 U.S. 306 (2003) .......................................................................................................... 20

*Haig v. Agee*,
453 U.S. 280 (1981)* ......................................................................... 11, 12, 15, 19

*Henderson v. Kennedy*,
253 F.3d 12 (D.C. Cir. 2001) ............................................................................................ 25

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010)* ............................................................................................................. 22

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) .......................................................................................... 17

*Humphries v. Los Angeles*,
554 F.3d 1170 (9th Cir. 2009),
*as amended* (Jan. 30, 2009), *rev'd on other grounds*, 562 U.S. 29 (2010) ........................ 13, 14

*Jibril v. Mayorkas*,
20 F.4th 804 (D.C. Cir. 2021) ............................................................................................ 9

*Jifry v. Fed. Aviation Admin.*,
370 F.3d 1174 (D.C. Cir. 2004) ......................................................................................... 17

*Kadi v. Geithner*,
42 F. Supp. 3d 1 (D.D.C. 2012) ......................................................................................... 17

*Kaemmerling v. Lappin*,
553 F.3d 669 (D.C. Cir. 2008) ........................................................................................... 24

*Kashem v. Barr*,
941 F.3d 358 (9th Cir. 2019)* ..................................................................... 3, 5, 8, 16

*Latif v. Holder*,
28 F. Supp. 3d 1134 (D. Or. 2014) ...................................................................................... 8

*Latif v. Lynch*,
No. 3:10-cv-00750-BR, 2016 WL 1239925 (D. Or. Mar. 28, 2016) .................................. 15

*Long v. Pekoske*,
38 F.4th 417 (4th Cir. 2022) .............................................................................................. 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)* ........................................................................................................... 9

iv

*Mahoney v. Doe*,
 642 F.3d 1112 (D.C. Cir. 2011) ............................................................................ 25

*Maniar v. Wolf*,
 No. CV 18-1362 (RDM), 2020 WL 1821113 (D.D.C. Apr. 10, 2020) ............................. 8, 23

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
 567 U.S. 209 (2012).................................................................................................. 23

*Mathews v. Eldridge*,
 424 U.S. 319 (1976)*................................................................................................ 15

*Mohamed v. Holder*,
 266 F. Supp. 3d 868 (E.D. Va. 2017)* ............................................................ 10, 16, 20, 21

*Mohamed v. Holder*,
 No. 1:11–cv–50 (AJT/MSN), 2011 WL 3820711 (E.D. Va. Aug. 26, 2011),
 *vacated*, No. 11-1924, 2013 U.S. App. LEXIS 26340 (4th Cir. May 28, 2013) ...................... 6

*Mohamed v. Holder*,
 No. 1:11-cv-50 (AJT/MSN), 2015 WL 4394958 (E.D. Va. July 16, 2015) ............................ 15

*Mokdad v. Lynch*,
 804 F.3d 807 (6th Cir. 2015) ...................................................................................... 7

*Navy SEAL 1 v. Austin*,
 --- F. Supp. 3d ---, 2022 WL 1294486 (D.D.C. Apr. 29, 2022).......................................... 25

*Paul v. Davis*,
 424 U.S. 693 (1976)............................................................................................ 13, 14

*Shearson v. Holder*,
 725 F.3d 588 (6th Cir. 2013)* ..................................................................................... 6

*Sherbert v. Verner*,
 374 U.S. 398 (1963)................................................................................................. 24

*United Transp. Union v. Norfolk & W. Ry. Co.*,
 822 F.2d 1114 (D.C.Cir. 1987)..................................................................................... 2

*Washington v. Trump*,
 847 F.3d 1151 (9th Cir. 2017) .................................................................................... 22

*Wilwal v. Nielsen*,
 346 F. Supp. 3d 1290 (D. Minn. 2018).......................................................................... 10

## STATUTES

5 U.S.C. § 702.......................................................................................................... 23

5 U.S.C. § 704 ................................................................................................ 23

5 U.S.C. § 706 .................................................................................................. 3

42 U.S.C. § 2000bb-1 ..................................................................................... 24

49 U.S.C. § 40113 ............................................................................................ 9

49 U.S.C. § 44903 ............................................................................................ 9

49 U.S.C. § 46110 .................................................................................... *passim*

**REGULATIONS**

49 C.F.R. §§ 1560.201–207 ......................................................................... 2, 7

**INTRODUCTION**

As set forth in Defendants' opening memorandum, the Court should dismiss Plaintiff's claims for lack of jurisdiction and because they fail as a matter of law.  To start, the Courts of Appeals have exclusive jurisdiction because Plaintiff's claims challenge—or are inescapably intertwined with—orders issued "in whole or in part" by the TSA Administrator.  49 U.S.C. § 46110(a).  At the same time, Plaintiff has not established standing for his Religious Freedom Restoration Act ("RFRA") claim because he fails to allege an imminent future injury related to his religious pilgrimage.

Even if the Court were to exercise jurisdiction, Plaintiff's Amended Complaint fails to state any claim for relief.  Plaintiff has not alleged the deprivation of any constitutionally protected liberty interest, nor demonstrated that DHS TRIP provides constitutionally inadequate process. Indeed, Plaintiff's own allegations demonstrate that he was provided confirmation that he is on the No Fly List, the criteria under which he was placed, an unclassified, non-privileged statement of the reasons for his placement, an opportunity to submit his own arguments and evidence, and a chance to appeal the Government's final determination.  As to his other claims, Plaintiff still has not alleged the violation of any fundamental right or conduct that "shocks the conscience."  His APA claim has an adequate alternative remedy available through review in the Courts of Appeals. He does not allege a substantial burden to his religious beliefs.  And the No Fly List is the least restrictive means of furthering the Government's compelling interest in maintaining national security and preventing terrorist attacks.

Plaintiff fails to meaningfully engage with these deficiencies.  He claims that he is on the No Fly List solely because his estranged mother told "made up stories" to an "overly credulous Government."  Pl.'s Opp'n to Defs.' Mot. to Dismiss at 2, ECF No. 20 ("Pl.'s Opp'n").  But that assertion is both late and irrelevant to the legal issues now before the Court.  In any case, although Plaintiff did not assert this theory at any point during the administrative process, he is not foreclosed from filing a new DHS TRIP application regarding any subsequent travel difficulties, and presenting further evidence or arguments as part of that application.  Plaintiff's assertion that

1

he was stranded abroad in Pakistan as a result of his No Fly List placement is also wrong, and in any event fails to state or support any claim.  As the Amended Complaint reflects, after initially being denied boarding on a flight to the United States, the U.S. Government facilitated Plaintiff's travel back to the United States by air.

For these reasons, set forth further below, the Amended Complaint should be dismissed.

## DISCUSSION

## I.    THE COURT LACKS JURISDICTION OVER THE COMPLAINT.

### A.  The Courts of Appeals Have Exclusion Jurisdiction Over Plaintiff's Claims.

Section 46110 broadly confers exclusive jurisdiction in the Courts of Appeals over any order issued "in whole or in part" by TSA pursuant to its statutory authorities.  49 U.S.C. § 46110(a) (emphasis added).  Importantly, a plaintiff "need not allege a direct challenge to [a TSA order] to fall within the ambit of § 46110(a)'s exclusive jurisdiction scheme." *Amerijet Int'l, Inc. v. DHS*, 43 F. Supp. 3d 4, 14 (D.D.C. 2014).  Instead, the "inescapable-intertwinement doctrine" gives the courts of appeals jurisdiction over not only direct challenges to final TSA orders under § 46110, "but also any claims inescapably intertwined with the review of those orders." *Durso v. Napolitano*, 795 F. Supp. 2d 63, 69 (D.D.C. 2011).  Under these principles, a plaintiff may not "avoid the bar of a clearly applicable jurisdictional statute" simply by "drafting an artfully worded complaint." *United Transp. Union v. Norfolk & W. Ry. Co.,* 822 F.2d 1114, 1120 (D.C. Cir. 1987).  Rather, the Court must "look to the gravamen of [Plaintiff's] claims," to determine whether they assert "broad facial challenges" to TSA's actions or "as-applied challenges" in which the plaintiff seeks review of the procedures and merits of an order. *Amerijet Int'l*, 43 F. Supp. 3d at 15–16 (citations omitted).

Here, Plaintiff does not appear to dispute that both the TSA Administrator's decision affirming his No Fly List placement, *see* Declaration of Stanley Mungaray, ECF No. 19-2 ("Mungaray Decl."), Ex. F, and the regulations setting forth the DHS TRIP procedures, *see* 49 C.F.R. §§ 1560.201–207, are "orders" of TSA, 49 U.S.C. § 46110(a).  Instead, he seeks to recast

his claims as focusing on TSC, not TSA.  Plaintiff says he does not challenge "any decision of the TSA Administrator," but instead only his "placement along with the Screening Center's decision to maintain him on the No Fly List all these years."  Pl.'s Opp'n 10.  As explained below, Plaintiff's argument is meritless.

### 1. Plaintiff's Substantive Claims Directly Challenge, Or Are Inescapably Intertwined With, An Order Of TSA.

On June 9, 2022, the TSA Administrator issued a final order finding the reasons for Plaintiff's placement on the No Fly List to be justified and no change in his status to be warranted.  *See* Mungaray Decl., Ex. F.  Plaintiff's substantive due process, APA, and RFRA claims all seek to challenge that conclusion by contesting the substantive basis for his No Fly List placement.[1]  Each of these claims directly targets and seeks to "set aside" TSA's June 9 final order by arguing that the reasons for Plaintiff's status do not justify the alleged burdens on his rights.  49 U.S.C. § 46110.  As the Ninth Circuit recognized in *Kashem*, Plaintiff must assert such "substantive challenges to [his] inclusion on the No Fly List by filing a petition for review in an appropriate court of appeals under § 46110."  *Kashem v. Barr*, 941 F.3d 358, 391 (9th Cir. 2019).

Plaintiff nonetheless dismisses TSA's order as merely "a rubber stamp on the final decision of the Screening Center."  Pl.'s Opp'n 8.  But he provides no support for this assertion, which is both inaccurate and contrary to his own allegations.  As demonstrated by the Final Order and Decision of the TSA Administrator, the Administrator thoroughly considered Plaintiff's claims and provided detailed reasons for his decision to maintain Plaintiff on the No Fly List.  Mungaray Decl., Ex. F; *see also id.* ¶¶ 19–20, 26–27 (explaining TSA's role in issuing the unclassified

---

[1] For example, Plaintiff's substantive due process claim alleges that because there is no "reasonable suspicion that Plaintiff is a known, suspected, or potential terrorist," his placement "violates [his] right to substantive due process."  Am. Compl., ECF No. 17 ("AC") ¶ 167. Similarly, his APA claim asserts that because Plaintiff is "neither a known nor appropriately suspected terrorist," his watchlist placement is "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, and contrary to constitutional rights."  *Id.* ¶ 174 (citing 5 U.S.C. § 706).  And his RFRA claim alleges that because Plaintiff "is neither a known nor appropriately suspected terrorist and poses no threat to aviation security," Defendants have "no compelling interest in burdening Plaintiff's right to perform Hajj."  AC ¶ 178.

summary and rendering a final determination).   As Plaintiff himself alleges, after "TSC . . . prepare[s] a recommendation to the TSA Administrator," the "TSA Administrator them [sic] makes the final written determination concerning the maintenance or removal of the No Fly List annotation." AC ¶ 53.  This is confirmed by the Watchlisting Overview document, which unequivocally designates TSA as the final decisionmaker for redress of U.S. persons on the No Fly List.  *See* Declaration of Samuel P. Robinson, ECF No. 19-1, Ex. A, Overview of the U.S. Government's Watchlisting Process and Procedures as of September 2020 at 9 & n.5 ("Watchlisting Overview") (While TSC "prepares a recommendation," TSA "makes [the] final determination[] concerning listing on the No Fly List.").  And even if Plaintiff were correct that TSA's order tracks TSC's recommendation, that would not change the analysis—the order would still be an order by TSA, at least "in part," and thus reviewable only in the Courts of Appeals.  49 U.S.C. § 46110(a).

Plaintiff points out that, regardless of TSA's decision, TSC retains the authority to remove him from the No Fly List.  Pl.'s Opp'n 8, 11.  That is correct, but does not establish jurisdiction here.  If TSC discovers new information that indicates an individual's No Fly List status is no longer warranted, TSC does not wait until the individual files a redress application to remove him or her from the list.  The opposite, however, is not the case—where TSA orders an individual removed from the No Fly List, TSC cannot then add them back based on the same information. *See* AC ¶ 53 (TSC must "technically implement any change to the No Fly List annotation the TSA Administrator directs"); Watchlisting Overview at 9 (TSC must "implement the determination").[2] Plaintiff is therefore incorrect that an order of the TSA is not at issue here.  Had Plaintiff properly sought review in a Court of Appeals, that court could have reviewed TSA's order and, if

---

[2] The Amended Complaint alleges that "[n]othing prevents the TSC, after removing an individuals' No Fly List annotation, from re-adding the same individual to the No Fly List based on the same or similar derogatory information."  AC ¶ 57.  The Court need not credit this allegation, which is not only wrong, but conclusory and hypothetical.  Plaintiff does not point to a single example of an individual being removed, and then re-added, to the No Fly List based on the same information.

appropriate, entered relief that Plaintiff be removed from the list, and TSC would have lacked authority to maintain or place Plaintiff on the No Fly List again based on the same information. *See, e.g.*, *Kashem*, 941 F.3d at 391 ("It is no longer the case . . . that any remedy must involve TSC.").

Thus, the relevant issue for purposes of jurisdiction is not whether another Defendant agency could remove Plaintiff from the No Fly List, but rather whether Plaintiff's claims in this case sufficiently implicate a TSA order. And here, in addition to the fact that Plaintiff challenges the substance of TSA's order (*i.e.*, its conclusion that the reasons for adding him to the No Fly List warrant his continued status), Plaintiff's claims are all directed at least in part at TSA. That is, the Amended Complaint names TSA as one of several Defendants and specifies that each of Plaintiff's claims challenges actions by "Defendants" without limitation. The Amended Complaint never draws a distinction, as Plaintiff suggests, between the actions of TSA and those of TSC, or otherwise limits Plaintiff's challenge to just TSC.

Plaintiff further notes that while TSA can remove him from the No Fly List, only TSC has authority to remove him from the Terrorist Screening Dataset ("TSDS") more broadly. Pl.'s Opp'n 8, 11. This, too, is beside the point. The gravamen of the complaint here—including most of the harms alleged by Plaintiff—relates to Plaintiff's inability to fly to, from, or over the United States, not his presence in a dataset. *See* AC ¶¶ 6–14, 99–109, 143–150, 176–78 (describing alleged harms). Thus, to the extent any of his claims can be viewing as challenging his inclusion in the TSDS—of which the No Fly List is a subset—those claims are inextricably intertwined with review of TSA's order that is challenged in this case.

Accordingly, the jurisdictional grant in section 46110 does not depend on who Plaintiff chooses to name as a Defendant. Rather, it turns on whether Plaintiff seeks review of an "order" of TSA—regardless of the identities of the other Defendants. *See, e.g.*, *Kashem*, 941 F.3d at 391–92 (dismissing claim based on section 46110 notwithstanding the Attorney General, FBI Director, and TSC Director all being defendants).

Plaintiff argues that his claims are "broader" than those in *Kashem*, and thus should not

similarly be subject to section 46110.  Pl.'s Opp'n 9.  But there is no serious dispute that, like in *Kashem*, Plaintiff brings as-applied, not facial, challenges—as demonstrated by his repeated reliance on allegations particular to himself.[3]  District courts are prohibited from hearing such "as-applied challenges in which the plaintiff seeks review of the procedures and merits of an order" of TSA.  *Amerijet Int'l*, 43 F. Supp. 3d at 15.

Plaintiff's reliance on *Fikre v. FBI* fares no better.  35 F.4th 762, 769 (9th Cir. 2022).  As an initial matter, the Government respectfully disagrees with *Fikre*, and has petitioned for *en banc* rehearing of that decision.  *See* Petition, *Fikre v. FBI*, No. 20-35904 (9th Cir. August 5, 2022).  But even assuming *Fikre* was correctly decided, the distinction *Fikre* drew between challenges to TSC's initial "placement" and challenges to TSA's final decision "maintaining" an individual on the No Fly List does not apply here.  Unlike in *Fikre*, here the Amended Complaint inarguably challenges TSA's final decision, including by quoting directly from that decision.  *See* AC ¶¶ 140–42.  For that matter, whereas in *Fikre* the "complaint mention[ed] the DHS TRIP process very little," 35 F.4th at 775, here the words "DHS TRIP" appear in the Amended Complaint twelve separate times, *see* AC ¶¶ 5, 9, 27, 50, 56, 94, 110–11, 113, 115.  While Plaintiff apparently would prefer for his challenge to proceed in this Court, "[t]he applicability of Section 46110 is to be judged by reference to the substance of plaintiff's claims, not [Plaintiff's] characterization of those claims as something other than the review of a TSA order."  *Amerijet Int'l*, 43 F. Supp. 3d at 16 (quoting *Mohamed v. Holder*, No. 1:11–cv–50 (AJT/MSN), 2011 WL 3820711, at *6 (E.D. Va. Aug. 26, 2011), *vacated*, No. 11-1924, 2013 U.S. App. LEXIS 26340 (4th Cir. May 28, 2013)).

Finally, Plaintiff argues that he is not required to exhaust the DHS TRIP process prior to bringing his claims.  Pl.'s Opp'n 6–9.  Aside from being incorrect, *see, e.g.*, *Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013) (dismissing claims for failure to exhaust administrative remedies

---

[3] *See, e.g.*, AC ¶ 173 ("*Plaintiff* is neither a known nor appropriately suspected terrorist, thus Defendants' conduct in placing him on the No Fly List" violates the APA (emphasis added)); *id.* ¶ 178 ("Defendants have no compelling interest in burdening *Plaintiff's* right to perform Hajj because *Plaintiff* is neither a known nor appropriately suspected terrorist and poses no threat to aviation security." (emphasis added)).

through DHS TRIP), this argument is also irrelevant. There is no dispute that Plaintiff *has already* exhausted his administrative remedies by completing DHS TRIP. And because that process is concluded, Plaintiff has received a final TSA order that gives rise to exclusive jurisdiction in the Courts of Appeals. 49 U.S.C. § 46110.

### 2. Plaintiff's Procedural Claims Directly Challenge, Or Are Inescapably Intertwined With, An Order Of TSA.

Plaintiff's procedural claims similarly challenge orders issued in whole or in part by TSA. Again, Plaintiff does not appear to dispute that the DHS TRIP procedures, including those set forth in TSA regulations, *see* 49 C.F.R. §§ 1560.201–207, are "orders" of TSA. Plaintiff's procedural due process and APA claims directly challenge those procedures by alleging that Defendants failed to provide Plaintiff with a "meaningful opportunity," and a "constitutionally adequate means," to challenge his inclusion on the No Fly List. AC ¶¶ 162, 173. Both claims seek to "set aside" the DHS TRIP procedures, as the means and opportunity to contest his No Fly List status *is* DHS TRIP. *See id.* ¶ 27 (conceding that DHS TRIP is "the only administrative complaint process by which Plaintiff may challenge his watchlist nomination to the TSDB and No Fly list."). And because those procedures are "orders" within section 46110, *see* Defs.' Mem. in Supp. of Mot. to Dismiss at 18, ECF No. 19 ("Defs.' Mem."), only the Courts of Appeals may "affirm, amend, modify, or set aside any part" of those procedures.

In *Mokdad*, the Sixth Circuit considered claims nearly identical to the procedural due process and APA claims presented here: that the "procedures established for [the plaintiff] to contest his alleged inclusion on the No Fly List (*i.e.,* the redress process)" are "unlawful under the APA and unconstitutional under the Fifth Amendment." *Mokdad v. Lynch*, 804 F.3d 807, 811 (6th Cir. 2015). The Sixth Circuit explained that Congress had "specifically directed" TSA to establish a redress process, and that TSA had "issued regulations carrying out its responsibilities" by creating DHS TRIP. *Id.* The Sixth Circuit thus held that where a plaintiff "challenges the adequacy of the redress process, his claims amount to a challenge to a TSA order." *Id.* Just like in *Mokdad*, Plaintiff here challenges the adequacy of the redress process—*i.e.*, DHS TRIP—and

therefore challenges a TSA order.

Plaintiff resists these conclusions, pointing to a footnote in *Kashem* stating that the parties there did not dispute district court jurisdiction over procedural claims. *See* 941 F.3d at 391 n.16. However, the procedural claims in *Kashem* arose in a unique context—the *Kashem* plaintiffs originally challenged the prior version of DHS TRIP procedures, and the Ninth Circuit held that such claims belonged in the district court prior to revision. *Id.* at 367–69 (procedural history); *id.* at 390–91 (distinguishing old procedures for jurisdictional purposes). During the pendency of that action, the Government developed revised redress procedures for U.S. persons on the No Fly List, and the court subsequently reviewed the adequacy of those revisions. *See Latif v. Holder*, 28 F. Supp. 3d 1134, 1163 (D. Or. 2014). *Kashem* thus arose in distinguishable circumstances, in which the new procedures involving TSA as the final decision-maker were first developed and tested.

Following issuance of those revised procedures, multiple courts have recognized that challenges to the DHS TRIP procedures must be brought in the Courts of Appeals. *See* Defs. Mem. 18–19 (citing cases). And indeed, there are at least two such petitions for review involving No Fly List claims currently pending in the D.C. Circuit. *See Moharam v. TSA, et al.*, No. 22-1184 (D.C. Cir. Aug. 5, 2022) (raising substantive and procedural claims regarding TSA Administrator decision affirming No Fly List placement); *Busic v. TSA*, No. 20-1480 (D.C. Cir. Nov. 30, 2020) (same).[4]

Faced with the above cases, Plaintiff suggests TSA lacked authority to issue the regulations setting forth the DHS TRIP procedures in the first place. Pl.'s Opp'n 11–12. But this contention is not in the complaint, and at any rate ignores the multiple statutory provisions granting TSA

---

[4] Plaintiff cites *Maniar v. Wolf*, No. CV 18-1362 (RDM), 2020 WL 1821113 (D.D.C. Apr. 10, 2020), for the proposition that section 46110 does not apply to procedural challenges to DHS TRIP. Pl.'s Opp'n 13. But that is not what *Maniar* held. Rather, the *Maniar* district court held that it could not conclude on the public record whether TSA was the relevant decisionmaker, and so denied the Government's motion to dismiss without prejudice, permitting it "to renew its motion with a more complete showing regarding the regulatory backdrop." *Maniar*, 2020 WL 1821113 at *5. Here, by contrast, the Court has the benefit of the Mungaray Declaration describing the DHS TRIP process, as well as the Robinson Declaration authenticating the current version of the Watchlisting Overview, plus Plaintiff himself alleges TSA is the final decisionmaker. AC ¶ 55.

precisely such authority.  *See* 49 U.S.C. §§ 40113(a), 44903(j)(2)(C)(iii)(I), 44903(j)(2)(G)(i).

In sum, TSA's regulations establishing the DHS TRIP process, as well as its final decision on Plaintiff's DHS TRIP application, are final "orders" of TSA, and Plaintiff's substantive and procedural claims directly challenge, or are at least inescapably intertwined with, those orders. This Court therefore lacks jurisdiction over the Amended Complaint.

### B.  Plaintiff Lacks Standing to Assert His RFRA Claim.

In addition to the jurisdictional problems outlined above, Plaintiff independently lacks standing to assert his RFRA claim because he has not alleged an imminent future injury related to that claim.  Plaintiff asserts that his No Fly List status "bans him from international travel for his religious purpose," *i.e.*, a pilgrimage to Mecca, AC ¶ 176, but he fails to allege that he has ever attempted to travel to Mecca or planned or prepared to do so at any particular time.  At most, Plaintiff's allegation of "a sincere religious belief that he must perform Hajj," *id.* ¶ 176, displays a general intent to undertake his pilgrimage "some day," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).  In the absence of "any description of concrete plans, or indeed even any specification of when the some day will be," Plaintiff has not established an "actual or imminent injury" related to a future religious pilgrimage to Mecca.  *Id.*

The D.C. Circuit's discussion in *Jibril v. Mayorkas*, 20 F.4th 804 (D.C. Cir. 2021) is not to the contrary.  The plaintiffs in *Jibril* had a "history of traveling to Jordan every two years," including one plaintiff "visiting relatives in Jordan between twelve and fifteen times over the past twenty-five years."  *Id.* at 814.  The D.C. Circuit contrasted those allegations with the facts of *Lujan*, where organizational Plaintiffs submitted affidavits averring that one member visited Egypt and "intend[ed] to do so again," and another had travelled to Sri Lanka and "intend[ed] to go back." *Id.* at 815 (quoting *Lujan*, 504 U.S. at 564).  Thus, assuming *Jibril* correctly analyzed the issue of standing, the plaintiffs there had an "extensive travel history" supporting an imminent future injury related to travel, whereas the *Lujan* plaintiffs' one-off prior trips and "some day intentions" failed to demonstrate sufficiently immediate plans to travel to Sri Lanka or Egypt.  *Id.* at 814–15 (quoting *Lujan*, 504 U.S. at 564).  Here, Plaintiff alleges even less than in *Lujan*—he alleges no past travel

or attempted travel to Mecca, no plans to travel to Mecca in the future, and no indication of when he would travel to Mecca, if ever.

Plaintiff also cites a handful of inapposite cases finding past intrusive searches or denials of boarding sufficient to demonstrate imminent future injuries related to future travel generally. Pl.'s Opp'n 39 (citing *Alasaad v. Nielsen*, No. 17-CV-11730-DJC, 2018 WL 2170323 (D. Mass. May 9, 2018); *Wilwal v. Nielsen*, 346 F. Supp. 3d 1290 (D. Minn. 2018); *Elhady v. Kable*, 391 F. Supp. 3d 562 (E.D. Va. 2019), *rev'd and remanded*, 993 F.3d 208 (4th Cir. 2021); *Mohamed v. Holder*, 266 F. Supp. 3d 868 (E.D. Va. 2017)).   Unlike in those cases, however, standing for Plaintiff's RFRA claim here requires more than a showing of imminent injury related to future travel as a general matter; instead, Plaintiff must demonstrate an imminent injury related to travel to a specific location (Mecca) and for a specific purpose (Hajj).   And while Plaintiff alleges past denials of boarding, *see, e.g.*, AC ¶ 5, his complaint contains nothing demonstrating concrete plans to embark on a religious pilgrimage to Mecca.

Finally, Plaintiff argues that he cannot actually prepare for his trip "while the specter of No Fly List placement remains over him."  Pl.'s Opp'n 39.  But an anticipated inability to travel does not excuse Plaintiff from alleging facts sufficient to demonstrate an actual or imminent injury. Because Plaintiff has not established standing for his RFRA claim, that claim should be dismissed.

## II.     PLAINTIFF FAILS TO STATE A CLAIM.

If the Court determines that it has subject matter jurisdiction, Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to state a claim for relief.

### A.  Count I (Procedural Due Process) Should Be Dismissed.

It is black letter law that, to allege a procedural due process violation, a plaintiff must show the deprivation of a constitutional liberty interest.  Plaintiff does not do so here, instead wrongly asserting that a mere "impact" on such a right suffices to state a claim.  Plaintiff also fails to plead a "stigma-plus" claim because, contrary to Plaintiff's arguments, such a claim requires widespread dissemination of stigmatizing information by the government, and in any event, he has not alleged

a "plus" factor.

### 1. A Mere "Impact" to "Travel-Related Liberty Interests" Does Not Suffice to State a Liberty Interest for a Procedural Due Process Claim.

As previously explained, a traveler does not have a constitutional right to the most convenient form of travel, and Plaintiff has not alleged the deprivation of any constitutional right to travel simply because he has been unable to board flights. Defs.' Mem. 21–22. The Supreme Court has held that "the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States." *Haig v. Agee*, 453 U.S. 280, 306 (1981). The freedom to travel internationally is "no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment," and is "subordinate to national security . . . considerations." *Id.* at 306–07. The No Fly List does not impermissibly deprive Plaintiff of his liberty interest in travel because he can still travel by numerous means. Plaintiff does not appear to directly challenge these propositions, but instead simply argues that "No Fly List placement *impacts* travel-related liberty interests." Pl.'s Opp'n 15–18 (emphasis added). The Government does not dispute this, but that is not the legally operative question. Rather, the issue is whether Plaintiff has been *deprived* of a liberty interest because he cannot board U.S. commercial flights, and the law is clear that he has no right to the most convenient form of travel. *See* Defs.' Mem. 21–23.

In fact, the No Fly List does not even completely prevent Plaintiff from traveling by air, contrary to his argument that the No Fly List is a "***complete ban***" on one particular mode of travel. Pl.'s Opp'n 16. The No Fly List only prevents Plaintiff from flying on commercial flights to, from, or over U.S. airspace or on U.S. carriers. Indeed, Plaintiff admits that if he wants to return to Pakistan or travel elsewhere internationally, he has the "option . . . to drive across the border to an airport [in] Mexico." AC ¶ 149.[5]

---

[5] Plaintiff further contends that his ability to travel by ship is restricted by U.S. Customs and Border Protection ("CBP") "mak[ing] recommendations to ship captains as to whether a passenger poses a risk to transportation security." Pl.'s Opp'n 16 (citations omitted). However, the Amended Complaint does not allege that Plaintiff desires to travel by ship, has ever attempted to travel by ship, or would in any way be restricted from traveling by ship if he chose to do so. To the extent he now belatedly attempts to argue in response to the Government's motion that his No

Plaintiff concedes that it "may be true to some extent" that "the right to travel internationally . . . may be curtailed for national security reasons," but argues that precedent holds only that *incidental* impact on international travel is permissible and that it is inappropriate to decide this case at the motion to dismiss stage because the Court is not able to assess the extent of the impact here.  Pl.'s Opp'n 17–18.  But the cases on which the Government relies do not restrict their holdings to incidental impacts.  *See Haig*, 453 U.S. at 286 (revoking passport and preventing all international travel); *Califano v. Aznavorian*, 439 U.S. 170, 177 (1978) (holding international travel restrictions appropriate "[u]nless the limitation imposed by Congress is wholly irrational"); *Clancy v. OFAC*, 559 F.3d 595, 604 (7th Cir. 2009) (prohibiting all travel to a country by any mode of transportation).  And while in some cases an inquiry into the impact on an individual's rights may be fact intensive, here, even accepting the facts in Plaintiff's complaint as true – that he is on the No Fly List and thus barred from boarding a U.S. commercial aircraft and flights to or over the United States – the complaint still fails to state a procedural due process claim.  Dismissing the case is the proper remedy here because the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted), in light of Plaintiff's ability to travel internationally, albeit through less convenient means.[6]

## 2.  A Stigma Plus Claim Requires Widespread Dissemination.

Plaintiff's claimed deprivation of a "right to be free from false governmental stigmatization" fares no better.  AC ¶ 161.  He argues that, under the stigma-plus test, it is not

---

Fly List status interferes with forms of travel other than by plane, he lacks standing to bring such a claim, given that any such injury is speculative.

[6] Although Plaintiff is correct that the Fifth Circuit in *Cramer v. Skinner* dealt with a lesser impact on travel than the No Fly List, the court based its holding on the fact that "[t]he Love Field amendment does not bar travelers from distant cities from using Love Field," 931 F.2d 1020, 1030 (5th Cir. 1991), just as Plaintiff's No Fly List status does not prohibit him from accessing international destinations.  In fact, the *Cramer* court found it persuasive that travelers could still access Love Field by traveling through a secondary location along the way and taking a second flight, *id.* at 1031, just as Plaintiff acknowledges that he can access international destinations by traveling through Mexico and taking a flight from there.  *See* AC ¶ 149.

necessary to show public dissemination of the purportedly stigmatizing information, but instead only "dissemination to a third party in relation to the change in status." Pl.'s Opp'n 19 (citing *Paul v. Davis*, 424 U.S. 693, 720 (1976)). According to Plaintiff, only "the different 'reputation-plus' test requires disclosure to the general public." *Id.*

Plaintiff is incorrect. The stigma-plus test is not satisfied merely by dissemination to a third-party, and Plaintiff's claim to that effect is not supported by the overwhelming breadth of case law that Plaintiff simply dismisses as "wrongly decided." *Id.* at 19, 20. In fact, the portion of *Paul* that Plaintiff cites for this view is from Justice Brennan's *dissenting* opinion—not the Court's opinion. *See* Pl.'s Opp'n 19 (citing *Paul*, 424 U.S. at 720). And Plaintiff's explanation that "[t]hat is why *Paul* and cases applying it talk of dissemination as opposed to publication," *id.*, makes no sense considering the facts of that case. In *Paul*, the government disclosed information to the general public in a flyer that was distributed across Louisville, Kentucky—not just to limited third-parties—yet the Supreme Court found the plaintiff had failed to allege a stigma-plus claim.

Plaintiff similarly presents *Garcia v. Pompeo*, No. 1:18-cv-01822 (APM), 2020 WL 134865 (D.D.C. Jan. 13, 2020), inaccurately. *See* Pl.'s Opp'n 18–19 (claiming that *Garcia* held that the stigma plus test does not require public disclosure). Although it is true that the dissemination there was limited to entities that might check the plaintiff's security clearance status, the Court actually found that the plaintiff had failed to establish a stigma-plus claim, *Garcia*, 2020 WL 134865, at *7, and certainly did not hold that the dissemination at issue was significant enough to be stigmatizing.

Plaintiff also misinterprets *Humphries v. Los Angeles*, 554 F.3d 1170 (9th Cir. 2009), *as amended* (Jan. 30, 2009), *rev'd on other grounds*, 562 U.S. 29 (2010). Plaintiff claims that "*Humphries* specifically relied on the fact that disclosure was simply to some third parties, rather than the general public, in order to find dissemination." Pl.'s Opp'n 19. But the status of the plaintiff in *Humphries* – that he was on a child abuse registry – was disseminated "to a broad range of third parties for a variety of purposes" including not just government entities but also numerous private parties including "persons 'making inquiries for purposes of pre-employment background

13

investigations for peace officers, child care licensing or employment, adoption, or child placement.'" *Humphries*, 554 F.3d at 1177 (citations omitted).  The dissemination of No Fly List status is materially different, as that information is disclosed primarily to "[a]gencies and officials authorized or required to conduct terrorist screening or to use information for diplomatic, military, intelligence, law enforcement, immigration, transportation security, visa, and protective processes."  Watchlisting Overview at 5.  For that reason, the Fourth Circuit has correctly held that "[t]he federal government's intragovernmental dissemination of TSDB information to other federal agencies and components, to be used for federal law enforcement purposes, is not 'public disclosure' for purposes of a stigma-plus claim."  *Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021); *see* Defs.' Mem. 24 (collecting cases).  The *Elhady* court recognized that this did not constitute dissemination even though "TSDB status is made available . . . to a select number of private companies that work closely with issues related to national security," *Elhady*, 993 F.3d at 226, just as Plaintiff alleges is true here of his No Fly List status.  "That comports with common sense; government could not function if every intra- or inter-departmental memo critical of a person created a constitutional claim."  *Id.* at 225.

### 3. The Inability to Fly Is Not a Plus Factor in Plaintiff's Stigma Plus Claim.

Even if Plaintiff had adequately alleged the "stigma" portion of the "stigma plus" claim, he still fails to allege a legally cognizable "plus factor."  In fact, the only "plus factor" that Plaintiff claims in his opposition brief is the "inability to fly."  Pl.'s Opp'n 20–21.  But to be a "plus factor," there must be an alteration or extinguishment of "a right or status previously recognized by state law."  *Paul*, 424 U.S. at 711.  As the Government has already explained, there has never been a right to travel internationally by aircraft previously recognized by state law.  *See* Defs.' Mem. 21–23; *supra* at 11.  Other courts have similarly found that TSDS status cannot be a "plus" factor because the "right to travel interstate or internationally has not been extinguished."  *Elhady*, 993 F.3d at 226–27. Plaintiff therefore fails to allege a "plus factor" and fails to state a procedural due process claim.

### 4. The Government Provided Adequate Process.

Finally, even if the Court were to find that Plaintiff had adequately pled the deprivation of a protected liberty interest, it should still dismiss his procedural due process claim because DHS TRIP provides constitutionally sufficient process. Plaintiff's arguments to the contrary fail.

### a. This Court May Decide the Adequacy Of The Process At This Stage.

As an initial matter, Plaintiff incorrectly claims that it is premature for the Court to decide the adequacy of the process he was afforded. Pl.'s Opp'n 21–22. The only cases Plaintiff cites to the contrary are out-of-circuit district court cases that were both decided under the prior DHS TRIP procedures, which afforded less process than the revised DHS TRIP procedures, and which were not as thoroughly explained publicly. *See Latif v. Lynch*, No. 3:10-cv-00750-BR, 2016 WL 1239925 (D. Or. Mar. 28, 2016); *Mohamed v. Holder*, No. 1:11-cv-50 (AJT/MSN), 2015 WL 4394958 (E.D. Va. July 16, 2015). Here, both the Amended Complaint and the Watchlisting Overview document set forth the process that Plaintiff received, and the Court may evaluate that process for legal sufficiency.

### b. DHS TRIP Provides Adequate Notice.

It is well-established that courts evaluate the adequacy of process under the *Mathews v. Eldridge* balancing test, which considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976). But Plaintiff addresses only the first two factors in his opposition and never responds to the Government's argument that "[n]o governmental interest is more compelling than the security of the Nation." Defs.' Mem. 26 (collecting cases) (quoting *Haig*, 453 U.S. at 307). The Court should therefore treat as conceded that the Government's interest is of the most compelling nature.

15

As to the other two *Mathews* factors, in his opposition, Plaintiff's only objection to the process DHS TRIP provided appears to be the alleged inadequacy of the notice.  *See* Pl.'s Opp'n 22–25.  However, Defendants' notice of the reasons for Plaintiff's No Fly List status specified that additional information could not be provided "due to law enforcement and national security concerns," Mungaray Decl., Ex. D.

In *Kashem*, the Ninth Circuit has squarely held that the current DHS TRIP process—that is, the same one used to confirm Plaintiff's No Fly List placement—provided constitutionally adequate due process.  941 F.3d at 390.  The Ninth Circuit explained that "[g]iven the national security concerns at issue, and with the exceptions noted, the government has taken reasonable measures to ensure basic fairness to the plaintiffs and followed procedures reasonably designed to protect against erroneous deprivation of the plaintiffs' liberty."  *Id.*  Nonetheless, Plaintiff argues that "*Kashem* was wrongly decided" and that it "did not find that the DHS TRIP process provided constitutionally adequate process in all cases."  Pl.'s Opp'n 24.  But the reasoning of *Kashem* as to what due process requires in the No Fly List context is quite sound.  And in that regard, the court rejected the very claims Plaintiff presents in his Amended Complaint that procedural due process requires a live hearing, disclosure of additional evidence, or access by counsel with security clearances to classified information for the No Fly List redress procedures.  *Kashem*, 941 F.3d at 379–80; *cf. Mohamed*, 266 F. Supp. 3d at 883 ("[T]he Court expects that through the DHS TRIP review process, a person who thinks he is on the No Fly List will have a meaningful opportunity to know and respond to the factual basis for his inclusion").

Plaintiff also points out that *Kashem* was decided at summary judgment based on a full record.  But as Plaintiff notes, *Kashem* was the first circuit court case to be decided following the revision of the DHS TRIP process in 2015, and so it was more appropriate there than here for the court to wait for a full record on what were new procedures at that time.  The DHS TRIP process is now well understood and undisputed, *see* Watchlisting Overview, and Plaintiff points to nothing that would prevent this Court from deciding the due process question on the Government's motion

to dismiss, because taking all the pleaded facts as true, Plaintiff still fails to state a claim.[7]

Other courts in national security contexts routinely hold that classified and/or law enforcement sensitive information need not be disclosed to individuals against whom the Government takes adverse actions, *see, e.g.*, *Fares v. Smith*, 901 F.3d 315, 324–25 (D.C. Cir. 2018) (rejecting argument that Government cannot rely on undisclosed classified and law enforcement privileged information to support a sanctions designation); *Kadi v. Geithner*, 42 F. Supp. 3d 1, 24 (D.D.C. 2012) (finding that "it was wholly proper for [Government] to rely on classified material in making its determination"). Indeed, the D.C. Circuit has repeatedly held that "due process require[s] the disclosure of *only* the unclassified portions of the administrative record." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (citation omitted); *see Jifry v. Fed. Aviation Admin.*, 370 F.3d 1174, 1183–84 (D.C. Cir. 2004). Plaintiff does not dispute this or demonstrate why the notice he received is constitutionally deficient.

Instead, Plaintiff presents two arguments that are entirely inconsistent with one another. He first argues that his notice of the unclassified, nonprivileged basis for his No Fly List status was insufficient because, although he "did his best to investigate and respond to the Government's claims . . . with no useful notice, he had nothing to respond to." Pl.'s Opp'n 22. Yet he simultaneously argues that, after receiving that notice, he "performed additional investigations" and learned of a claimed attempt by his estranged mother to keep his father from having custody over him by providing "false" information to the FBI regarding Plaintiff's activities in Pakistan. *Id.* at 22–23; AC ¶¶ 29, 132.

Clearly, then, the notice the Government provided alerted Plaintiff to the fact that the Government's determination was based in part on his "contacts and activities in Pakistan from

---

[7] Plaintiff also references *Long v. Pekoske*, No. 20-1406 (4th Cir), to show that "[c]onsistently, the Government provides single-paragraph explanations of the charges for which No Fly Listees have to respond, and even then, the charges often make no sense." Pl.'s Opp'n 25. But that case is entirely unrelated, and in any event, neither the district court nor the Fourth Circuit held that the *Long* plaintiff was afforded insufficient process under DHS TRIP; rather, the Fourth Circuit dismissed his No Fly List claim as moot after the Government determined that he no longer satisfied the No Fly List criteria. *See Long v. Pekoske*, 38 F.4th 417, 420 (4th Cir. 2022).

2008 to 2012," AC ¶ 113 (citation omitted), so he would have been aware that he should consider those contacts and activities and address them in any appeal.  In short, Plaintiff asks this Court to find that DHS TRIP does not provide constitutionally adequate process because he personally failed to provide during the administrative process what he now apparently considers to be his best defense.  That does not reflect the inadequacy of the process, so much as the inadequacy of Plaintiff's use of the process.  And to the extent Plaintiff seeks to further challenge the Government's determination based on his allegations regarding his mother, he may do so by submitting a new DHS TRIP inquiry regarding his subsequent travel difficulties and, ultimately, by seeking judicial review in the Court of Appeals should his No Fly List status be maintained.  49 U.S.C. § 46110.

### B.  Count II (Substantive Due Process) Should Be Dismissed.

With respect to his substantive due process claim, Plaintiff argues that the Government's reliance on the "shocks the conscience" doctrine is misplaced because "[s]ubstantive due process protects against more than just conscience-shocking behavior.  It also protects fundamental rights." Pl.'s Opp'n 26.  It is true that substantive due process protects fundamental rights, but Plaintiff has not alleged violation of any fundamental right here.  While he argues there is a fundamental right to free movement, what he actually seeks is a fundamental right to travel by airplane.  Therefore, the question becomes whether the Court should be the first to recognize a new fundamental right to air travel.  It should not, but even if this Court were to recognize such a right, Plaintiff's No Fly List status survives heightened scrutiny.  And if the Court does not recognize a new fundamental right, the No Fly List does not shock the conscience.

### 1.  There is no Fundamental Right to Travel by Airplane.

Plaintiff argues that there is a fundamental right to free movement.  *Id.* at 27.  That may be true, at least as applied to interstate travel, and yet it still would not help him because that right does not extend to travel by a specific means, and no court has ever held that it does.  Indeed, Plaintiff devotes nearly four pages of his opposition to discussing the history of the right to free

movement, *see id.* at 27–30, and yet he does not point to a single case that would indicate that this right to free movement extends to a particular means of travel.  Plaintiff's argument thus reduces to a request that this Court recognize a new fundamental right protecting travel specifically by air.

For the reasons the Government has already explained, that request should be denied. There simply is no right—let alone a fundamental right—to travel by the most convenient means. *See* Defs.' Mem. 22 (collecting cases).  In fact, many of the cases Plaintiff cites in his opposition for the right of free movement make clear that their holdings do not extend to an individual's chosen means of movement or even to international travel at all.  *See, e.g.*, *Haig*, 453 U.S. at 306; *Califano*, 439 U.S. at 176.  The Court should therefore reject Plaintiff's request to be the first Court to recognize a fundamental right specific to travel by air.

### 2.  The No Fly List Does Not Significantly Interfere with Either Interstate or International Travel.

Plaintiff next argues that "Khalid's Substantive Due Process claim survives even if this Court splices Khalid's right of movement into separate rights regarding interstate and international."  Pl.'s Opp'n 30.  There are of course critical differences as a matter of constitutional law between interstate and international travel, as the Government has explained.  *See supra* at 11. These differences are important here because Plaintiff does not actually allege in his Amended Complaint that he desires to travel within the United States but has been hindered from doing so. Therefore, because Plaintiff pleads no facts that allege that his No Fly List status has significantly interfered with his right to travel domestically, the Court should not credit those arguments now.

But even if the Court were to consider the question of interstate travel, the No Fly List does not significantly interfere with interstate travel.  "Neither plaintiffs nor anyone else have a constitutionally protected interest in being able to travel domestically or internationally without incurring some burdens."  *Elhady*, 993 F.3d at 221.  It is undisputed that the No Fly List only prevents Plaintiff from traveling by airplane on U.S. commercial carriers or over U.S. airspace.  It does not prevent him from taking a train, a car, a bus, a boat, or any other mode of transportation, apart from an airplane.  *See id.* at 222 ("No plaintiff alleges he is unable to get to a particular

destination because of the TSDB.  That is decisive.").  Rather, Plaintiff points to a single, out-of-circuit district court case that held that the No Fly List significantly interferes with the right to interstate travel.  *See Mohamed*, 266 F. Supp. 3d at 879–80.  The Government respectfully disagrees with that holding, but in any event, the *Mohamed* court ultimately held that "the List is necessary and sufficiently narrowly tailored to achieve a compelling government interest and therefore does not violate Plaintiff's substantive due process rights."  *Id.* at 883.

Because Plaintiff does not allege the violation of any fundamental right, the Court should dismiss his substantive due process claim.

### 3.  The No Fly List is Narrowly Tailored.

Because the Government's actions do not interfere with a fundamental right, the Government need demonstrate only that they do not "shock[] the conscience."  *Fraternal Ord. of Police Dep't of Corr. Lab. Comm. v. Williams*, 375 F.3d 1141, 1145 (D.C. Cir. 2004) (citation omitted).  But even if the Court were to apply strict scrutiny, the No Fly List survives.  Under strict scrutiny, a government restriction is upheld if it is "necessary to further a compelling governmental interest" and it is "narrowly tailored to further that interest."  *Grutter v. Bollinger*, 539 U.S. 306, 308 (2003).  Plaintiff does not challenge that the Government's objective of combatting terrorism is compelling.  So, even if the Court were to find that the No Fly List is subject to strict scrutiny, which it should not, it is narrowly tailored to serve a compelling governmental interest.

Plaintiff's argument to the contrary regarding narrow tailoring rests on the mistaken notion that the No Fly List's total ban on flying over U.S. airspace is overbroad because the Government occasionally grants one-time waivers that allow U.S. citizens like Plaintiff to return to the United States.  *See* Pl.'s Opp'n 32–33.  But the purpose of the Government's limited waiver process is to repatriate U.S. citizens who are located abroad when they are added to the No Fly List.  *See* Declaration of Samuel P. Robinson ¶ 8, ECF No. 19-1.  It does not follow that "if the Government can make these exceptions in unique circumstances, it can make them elsewhere."  Pl.'s Opp'n 32.  In the case of these limited purpose waivers, the dedication of significant Government resources

to coordinate and affect the waiver is warranted by the right of U.S. persons to be repatriated under certain circumstances.  But the Government cannot dedicate these same limited resources more frequently and with a less compelling justification.

Similarly, Plaintiff also claims that there is no "proof at this stage that individuals like Khalid on the No Fly List pose such a threat to aviation security that they should be forbidden from flying outright—or indeed, that they pose any threat to aviation security at all."  Pl.'s Opp'n 32.  But that is contrary to TSA's final order, as well as the notice of reasons provided to Plaintiff for his No Fly List status.  In any event, Plaintiff does not suggest any more narrowly tailored means available to the Government to achieve its compelling interest.  The TSA Administrator has explained that he has "also considered whether requiring Mr. Khalid to undergo enhanced security screening prior to flying and other available security measures short of inclusion on the No Fly List would be sufficient to counteract the threat that he poses" but ultimately decided that "[c]heckpoint screening cannot be 100 percent effective . . . . [n]or can Federal Air Marshals be relied upon to cover every flight and mitigate every in-flight threat."  Mungaray Decl., Ex. F at 5. He therefore ultimately found that "evolving security considerations, including current threats to transportation security, warrant use of the No Fly List."  *Id.*

In any event, "[i]n assessing whether the No Fly List is narrowly tailored to serve a compelling government interest, the relevant context is not, as Plaintiff contends, all forms of public transportation that may be vulnerable to a terrorist threat, but rather, specifically, commercial aviation, with its special vulnerabilities."  *Mohamed*, 266 F. Supp. 3d at 882.  The Government's operation of the No Fly List, as well as its criteria for placing individuals on the No Fly List, bears a close relationship to the aim of preventing terrorism.  Plaintiff's inclusion on the No Fly List resulted from the Government's assessment that he is "an individual who represents a threat of engaging in or conducting a viol[ent] act of terrorism and who is operationally capable of doing so" based on, among other things, information about his contacts and activities in Pakistan between 2008 and 2012 and his lack of candor when interviewed by FBI Special Agents.  AC ¶¶ 113, 141.  Prohibiting air travel through U.S. airspace and on U.S. air carriers in such

21

circumstances is a narrowly tailored, and sensible, approach.  Courts have recognized that, in national security, "'the lack of competence on the part of the courts is marked,' . . . and respect for the Government's conclusions is appropriate." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010) (internal citation omitted); *see also Washington v. Trump*, 847 F.3d 1151, 1162 (9th Cir. 2017) ("[O]ur jurisprudence has long counseled deference to the political branches on matters of immigration and national security.").  Therefore, to the extent there is any question about the need for the No Fly List, the Court should defer to the Government's expertise and concerns in this area.

 For the reasons set forth above, Plaintiff has failed to state a claim for violation of substantive due process, and the Court should dismiss that claim.

### C.  Count III (APA) Should Be Dismissed.

The Amended Complaint alleges that Defendants violated the APA through their "actions in placing Plaintiff on the No Fly List," and in "providing no constitutionally adequate avenue for redress."  AC ¶ 172.  Recognizing that the Government has not yet produced the administrative record, Defendants at this juncture have not argued that Plaintiff's inclusion on the No Fly List satisfies arbitrary and capricious review.  Instead, the Government has advanced two arguments, both of which support dismissal at the pleading stage.

First, Plaintiff has failed to state an APA violation related to lack of a "constitutionally adequate avenue for redress."  *Id.*  The DHS TRIP procedures—which are alleged in the Amended Complaint and set forth in regulations and the Watchlisting Overview document—satisfy constitutional due process standards, *see supra* Section A, and the Court need not consider the administrative record to hold that this aspect of Plaintiff's APA claim is based on a legally erroneous interpretation of due process rights.  Plaintiff appears to agree that resolution of his procedural due process claim should control this aspect of his APA claim.  *See* Pl.'s Opp'n 36–37 (repeatedly referring to the section of Plaintiff's brief discussing procedural due process).  Thus, for the same reasons Plaintiff's procedural due process claim should be dismissed, his APA procedural challenge should be dismissed as well.

Second, Plaintiff's APA claim should be dismissed *in its entirety* because there is an

adequate, alternative remedy for No Fly List challenges: section 46110. The APA does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Likewise, only "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review" under the APA. *Id.* § 704. These well-established exceptions to the general presumption of the availability of APA review "prevent[] plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). Thus, "'[w]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Id*. at 216 (citations omitted); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("[W]here the Congress has provided special and adequate review procedures," the APA is not available) (citation omitted).

Accordingly, as the court in *Maniar* recognized, "where applicable, § 46110 vests the Courts of Appeals with exclusive jurisdiction to review orders issued by the TSA Administrator, thereby providing interested parties with an alternative remedy and excluding such claims from the APA's waiver of sovereign immunity." 2020 WL 1821113, at *3 (citation omitted). Plaintiff does not dispute that section 46110 precludes APA review, other than to argue that section 46110 does not encompass his claims. *See* Pl.'s Opp'n 9–15. However, for the reasons set forth above, each of Plaintiff's claims—including his APA claim—comes within section 46110, and thus his APA claim should be dismissed.

Finally, Plaintiff's opposition advances a series of arguments under the rubric of the APA that were not raised in Defendants' motion and are not supported by the Amended Complaint. *See id.* at 33–37 (arguing that the No Fly List and the TSC lack statutory authority and violate the non-delegation doctrine, and that the No Fly List and watchlisting placement standards are arbitrary and capricious). None of these theories are presented in the Amended Complaint—which raises only a substantive APA challenge to Plaintiff's inclusion on the No Fly List and a procedural challenge to the DHS TRIP process. AC ¶¶ 171–75. Accordingly, to the extent the Court does

not dismiss Plaintiff's APA claim in full, it should limit that claim to the allegations presented in the Amended Complaint.

### D.  Count IV (RFRA) Should Be Dismissed.

Finally, Plaintiff fails to state a RFRA claim.  The Amended Complaint asserts that Plaintiff "holds a sincere religious belief that he must perform Hajj, a pilgrimage to Mecca, Saudi Arabia," and that his presence on the No Fly List "substantially burdens his religious exercise because it bans him from international travel for his religious purpose." *Id.* ¶ 176.  Those bare allegations— devoid of evidence of concrete plans or preparations to visit Mecca or any unsuccessful prior attempt to visit—fail to plausibly allege a "substantial burden" on Plaintiff's religious exercise. 42 U.S.C. § 2000bb-1.  Indeed, in the absence of further allegations, there is no reasonable inference that Plaintiff plans to visit Mecca in the near future, in which case his religious exercise has suffered no burden at all, let alone a substantial burden.  That distinguishes this case from *El Ali v. Barr*, where one plaintiff "routinely" led groups on pilgrimages to Mecca and another had to "abandon" performing Hajj based on inclusion in a watchlist.  473 F. Supp. 3d 479, 526–27 (D. Md. 2020); Pl.'s Opp'n 39.

Even assuming *arguendo* Plaintiff plans to visit Mecca in the near future, the No Fly List leaves him free to travel internationally by means other than a flight on a U.S. carrier or within U.S. airspace—including by automobile, ship, train, or flights from other countries.  Plaintiff apparently now rejects the idea that he may fly from another country, such as Mexico.  *See* Pl.'s Opp'n 38–39.  But his own complaint suggests that a flight from Mexico is an "option" available to him.  AC ¶ 149.  And while methods other than a flight from the United States may be less convenient, they do not require Plaintiff to "violate his beliefs," *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (citations omitted), or "choose between following the precepts of h[is] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).  Moreover, to the extent Plaintiff asserts the threat of detention or torture in a foreign country is part of the substantial burden on his religious exercise, *see* Pl.'s Opp'n 38, any such burdens are not fairly traceable to

Defendants here, *see El Ali*, 473 F. Supp. 3d at 527–28 (actions taken by third party after receipt of watchlist information not fairly traceable to federal government for purposes of RFRA claim).

Plaintiff objects to Defendants' reliance on *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) and *Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011), cases which hold that a restriction "on one of a multitude of means" by which an individual can exercise his religious belief does not amount to a substantial burden.  Pl.'s Opp'n 39–40.  But much as the prohibitions on distributing t-shirts in *Henderson* and writing on a sidewalk in *Mahoney* left open alternative avenues for preaching a religious message, the No Fly List's prohibitions on flying to, from, or over the United States or on a U.S. carrier leave open alternative means of travel to Mecca.  This separates this case from cases like *Capitol Hill Baptist Church v. Bowser*, where the challenged regulation "foreclosed the [plaintiff] Church's *only* method to exercise its belief."  496 F. Supp. 3d 284, 296 (D.D.C. 2020); *see* Pl.'s Opp'n 40.

Nor is Plaintiff correct that national security interests are not "sufficient for the Government to meet its heavy burden under RFRA."  Pl.'s Opp'n 41.  Courts in this district have recognized the Government's national security interests as compelling for purposes of evaluating RFRA claims.  *See, e.g.*, *Navy SEAL 1 v. Austin*, --- F. Supp. 3d ---, 2022 WL 1294486, at *9 (D.D.C. Apr. 29, 2022) (finding compelling "national security" interest in vaccinating Navy Seal asserting claim under RFRA).  Here, there is little doubt the Government's interest in ensuring national security and preventing acts of terrorism is compelling.

Finally, for the reasons discussed above and in Defendants' motion—including the No Fly List's criteria and rigorous nomination process, its quality controls and redress process, and its focus on one particular method of travel—the No Fly List is the least restrictive means of furthering the Government's compelling national security interests.  Accordingly, Plaintiff has failed to state a RFRA claim, and the Court should dismiss Count IV.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss and dismiss Plaintiff's Amended Complaint.

Dated: August 31, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

/s/ *Matthew Skurnik*
MATTHEW SKURNIK
(N.Y. Bar No. 5553896)
CHRISTOPHER D. EDELMAN
(D.C. Bar No. 1033486)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 616-8188
Matthew.skurnik@usdoj.gov

*Counsel for Defendants*