UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAAD BIN KHALID**, *Plaintiff,* v. **MERRICK GARLAND**, et al *Defendants.* | Case No. **1:21-cv-02307-CRC** Hon. Judge Christopher R. Cooper |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRE-LIMINARY INJUNCTION**

1

## INTRODUCTION

In March 2022, Saad bin Khalid flew two times—from London to New York City, and then on to Cincinnati—with the Government's permission. Now, after traveling to Pakistan to be present for the birth of his infant son, Khalid is marooned there because the Government refuses him permission to fly home. To justify their inconsistent dispensation of No Fly List waivers, the Government asserts without explanation that another flight back to the United States is mysteriously more dangerous than Khalid's flight just months ago.

The Government's arguments do not hold up. Khalid seeks relief from an ongoing violation of his substantive due process rights, which indisputably inflicts an irreparable injury, and it serves the public interest to ensure the sanctity of the Constitution. And this Court knows that the Government could allow Khalid to board a flight home from Pakistan to the United States, because Defendants did so previously. At bottom, the Court should order the Government to do what it has done before and allow Saad Bin Khalid—an innocent American citizen who has not been charged or arrested, let alone convicted, of any crime—on a flight arriving in the United States before October 10th.

## ARGUMENT

A plaintiff seeking a preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Each of those factors favors Plaintiff here, and the Government's protestations to the contrary are not convincing.

> **I.  Saad Bin Khalid is likely to succeed on the merits of his claim that his placement on the No Fly List violates his substantive due process rights.**

State action that wrongfully deprives a person of a fundamental liberty interest must

be "narrowly tailored to serve a compelling interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). The No Fly List impairs Khalid's fundamental right to freedom of movement and, because the No Fly List is not narrowly tailored, violates the Fifth Amendment Due Process Clause.[1]

### A. Khalid's status on the No Fly List implicates his fundamental right to movement.

The Government's opposition (at 32) stands out for what it does not do. It does not dispute that the right to movement is "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." *Dobbs*, 142 S. Ct. at 2246. As explained in the Motion for Preliminary Injunction (at 6-11), the fundamental right to freedom of movement has been recognized by the D.C. Circuit for decades, *see Hutchins by Owens v. D.C.*, 144 F.3d 798, 806 (D.C. Cir. 1999), and is reflected in "the history and tradition that map the essential components of our Nation's concept of ordered liberty," *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2248 (2022). *See generally Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 901-02 (1986). The harrowing ordeal Khalid endured to witness the birth of his baby boy—traveling for seven days across six countries at immense personal cost—poignantly illustrates how the No Fly List implicates that fundamental right.

Rather than dispute the existence of Khalid's fundamental right, the Government splits hairs trying to distinguish Khalid's claim from that robust body of law. The Government argues that "a traveler does not have a constitutional right to the most convenient form of travel" and points out that state actors may validly restrict travel by, for example, requiring drivers'

---

[1] The Government (at 30) points the Court to its argument—laid out in its Motion to Dismiss briefing—that Khalid's claim should be analyzed under the framework for procedural due process claims, rather than substantive due process. But Plaintiff has established distinct procedural and substantive due process claims, *see* Dkt. 20 at 15-33, and the substantive due process framework should be applied here.

licenses and bus fares. According to the Government (at 33), because Khalid "can travel internationally" by bus, train, or roundabout flights that do not enter, exit, or traverse United States airspace, his substantive due process claim does not implicate a fundamental right. The Government's argument rests precariously on the technical fact that it has not completely deprived Khalid of his fundamental right to movement. As a result, the Government says, his claim does not implicate that right.

The Government cites no authority for the extraordinary proposition that a right is only implicated by state action when the plaintiff has been ***completely deprived*** of that right. Indeed, as one court noted in rejecting the argument the Government makes here, "governmental actions taken to prevent or impede a citizen from reaching the border" implicate substantive due process rights, which necessarily include "more than simply the right to step over the border after having arrived there." *Mohamed v. Holder*, 995 F. Supp. 2d 520, 536 (E.D. Va. 2014).

And Supreme Court precedent forecloses the complete-deprivation doctrine the Government asks this Court to adopt. In *Zablocki v. Redhail*, 434 U.S. 374 (1978), the Supreme Court confronted a Wisconsin statute that burdened the fundamental right to marry by conditioning access to marriage on an individual's ability to comply with legal obligations to support offspring not in his custody. *Id.* at 375. The Court explained that different groups of people would be differently affected by the law. The destitute would be "absolutely prevented from getting married," some of those who could formally comply would be "sufficiently burdened by having to do so that they [would] in effect be coerced into forgoing their right to marry," and those with sufficient financial resources to comply would nonetheless "suffer a serious intrusion into their freedom of choice in an area in which we have held such freedom

to be fundamental." *Id.* at 387. The Court held that in all cases—regardless of an individual's ability to pay—the statute "significantly interfere[d] with the exercise of a fundamental right" and triggered strict scrutiny. *Id.* at 388. So too here, where Khalid's fundamental right of movement has been significantly burdened though not, as the Government points out, completely denied.

Courts have applied that general principle to specifically reject the Government's argument that the No Fly List does not implicate a fundamental right because listees can travel by other means. When, as here, the "primary objective" of Government action is "actually deter[ring] travel, "an individual suffers a deprivation of constitutional dimension." *El Ali v. Barr*, 473 F. Supp. 3d 479, 508 (D. Md. 2020) (citing *Soto-Lopez*, 476 U.S. at 903); *see Elhady v. Piehota*, 303 F. Supp. 3d 453, 464 (E.D. Va. 2017) (finding a "deprivation of a liberty interest as that term is historically understood" where plaintiffs avoided travel because of "invasive additional screening and other liberty-constraining activities" such as hours-long detentions and interrogations). As the Ninth Circuit has explained, though a plaintiff may not "possess a fundamental right to travel by *airplane*," "in many instances air travel constitutes the only practical means of traveling across great distances, especially internationally." *Kashem v. Barr*, 941 F.3d 358, 378 (9th Cir. 2019) (emphasis in original). As such, the No Fly List implicates the "liberty interest in domestic and international travel." *Id.*; *see also El Ali*, 473 F. Supp. 3d at 508 (that "less convenient means of transportation" remain technically available "does not change the analysis when considering, in many instances, the tremendous effort and time required to take such an alternative option"); *Mohamed v. Holder*, 266 F. Supp. 3d 868, 879 (E.D. Va. 2017) (holding that the No Fly List implicates the fundamental right of interstate travel because "[a]lthough the List does not prevent designees from traveling domestically, it

5

limits their practical ability to do so").

The Government also argues (at 32-33) that Khalid's claim implicates only the right to travel internationally. Wrong again. "[I]nterstate and international travel are increasingly seamless and we can no longer reasonably view interstate and international travel as discrete and separable activities." *Mohamed 2017*, 266 F. Supp. 3d at 878. And, as explained in the Motion for Preliminary Injunction (at 9-10), the No Fly List burdens Khalid's fundamental right to depart from and return to his country of citizenship, which is an ancient and particularly pronounced aspect of the fundamental right to movement. In any event, even if this Court analyzes Khalid's claim with reference to the right to international travel, the No Fly List nonetheless implicates that right. *See Latif*, 28 F. Supp. 3d at 1149; *El Ali*, 473 F. Supp. 3d at 508. The facts of this case—with Khalid's family stuck in Pakistan and his career in the United States—make the No Fly List's profound impact on Khalid's right of movement too plain to dispute.

### B. The No Fly List is not narrowly tailored.

The Government's decision to place Khalid on the No Fly List—and refusal to consider a less-restrictive alternative like selecting any flight that arrives in the United States before October 10th and taking pre-flight and in-flight security measures to mitigate whatever risk the Government apparently perceives—flunks strict scrutiny. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). As discussed in the Motion for Preliminary Injunction (at 11-13), the Government has previously allowed Khalid to fly home to the United States, and the existence of exceptions to an otherwise-rigid policy shows a lack of narrow tailoring. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296-97 (2021). Where the Government makes exceptions under some circumstances but not others, it must show that the activities for which it has

refused exceptions are "more dangerous than those activities" that received exceptions. *Id.* Under that framework, the Government's "One-Time Waiver" policy is not narrowly tailored because it cannot show that granting Khalid a second waiver is materially more dangerous than granting him the first waiver.

In articulating its narrow-tailoring argument, the Government merely recites (at 34-35) the standards for inclusion in the terror watch list and No Fly List—neglecting to mention that the Government had already adjudged Khalid to meet those standards when he last flew home to the United States. To the extent that the Government argues (at 23-24) that Khalid will miraculously become more of a danger to commercial air travel when he is permitted to fly home twice (rather than just once) that is unsupported, fearmongering nonsense. Even the Government does not believe that Khalid is too dangerous to fly.

Only a few months ago, in March 2022, the Government approved two flights that the No Fly List would have otherwise barred: an international flight from London to New York City and a domestic flight from New York City to Cincinnati. *See* Dkt. 22-2, Abbas Decl., Ex. B, at ¶ 13. The Government's conclusory statement that Khalid could "analyze" his experience on a flight home—which would not, presumably, be all that different from those first Government-facilitated flights—and "use such information to commit or assist in a terrorist attack" makes no sense. *See* Gov't Opp. to Motion for Preliminary Injunction, Dkt. 25, at 23 (quoting Turner Decl. ¶ 33). What could Khalid possibly learn the second time he flies on a plane that happens to land in the United States that he did not learn the first time? (And that he did not learn on the five separate flights he took to witness the birth of his son?) The Government declines to say.

Nor does the Government explain why additional security procedures, like searching Khalid's person and luggage or having one or more of the thousands of gun-wielding federal air marshals the Government employs accompany him on the flight, would be insufficient to mitigate the perceived risks. If Khalid is too dangerous for extra screening and federal air marshals to handle, why did the Government let him on the previous flights in the first place? Again, the Government does not explain. The Government merely asserts national security as some sort of talisman, so that national security demands whatever the Government says it is. But of course, the magic words "national security" do not overcome judicial inquiry. *Mitchell v. Forsyth*, 472 U.S. 511, 523 (1985) (also noting that "the label of 'national security' may cover a multitude of sins").

The Government's complaints about administrative burden (at 23-24) are also irrelevant to the analysis. If the Government is going to ruin Khalid's life and prevent him from flying between Pakistan (to see his wife, toddler, and newborn infant) and the United States (for his work), substantive due process requires officials to take on the administrative burden of narrowly tailoring their efforts.

### C. This Court has original jurisdiction over Plaintiff's substantive due process claim.

The Government recycles at length its arguments from the Motion to Dismiss briefing to argue that 49 U.S.C. § 46110 deprives this Court of jurisdiction to hear Khalid's substantive due process claim. For the reasons explained in Plaintiff's Opposition to the Government's Motion to Dismiss (Dkt. 20 at 9-15), the Government is mistaken.

## II. The remaining preliminary injunction factors weigh in favor of allowing Khalid on a flight to the United States before October 10th.

After demonstrating a likelihood of success on the merits, a party seeking a preliminary

injunction must show "(a) a substantial threat of irreparable injury if the injunction is not issued, (b) that the threatened injury if the injunction is denied outweighs any harm that will result of the injunction is granted, and (c) that the grant of an injunction with not disserve the public interest." *Munaf v. Geren,* 553 U.S. 674, 689-90 (2008); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542 (1987); *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311-12 (1982). Khalid has done so here.

### A. Plaintiff will suffer irreparable harm in the absence of injunctive relief.

"It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 472 U.S. 347, 373 (1976) (plurality opinion)). Without injunctive relief, Khalid will continue to suffer an irreparable injury as a matter of law: the ongoing deprivation of his substantive due process rights. *See* Motion for Preliminary Injunction, Dkt. 22, at 13-15. As the Government concedes (at 19), this Court has held that where a plaintiff "has sufficiently demonstrated a likelihood of success on the merits for its Fifth Amendment substantive due process claim," that satisfies the irreparable-injury inquiry as a matter of law. *See Southern Poverty Law Ctr. v. DHS*, 2020 WL 3265533, at *32 (D.D.C. 2020); *Costa v. Bazron*, 464 F. Supp. 3d 132, 155-56 (D.D.C. 2020) ("Plaintiffs have established a likelihood of success of portions of their constitutional claims, and they are correct that a Fifth Amendment violation is itself irreparable."). Nothing more is required. *See, e.g.*, *Leaders of a Beautiful Struggle v. Baltimore Police Dept.*, 2 F.4th 330, 346 (4th Cir. 2021) ("Because there is a likely constitutional violation, the irreparable harm factor is satisfied."); *Nat'l Fed. of Fed. Employees-IAM v. Vilsack*, 681 F.3d 483, 499 (D.C. Cir. 2012) ("[T]he loss of constitutional protections constitutes irreparable injury.").

The Government (at 19) quarrels with those decisions, contending that the better view of the irreparable-harm inquiry is that a likelihood of success on a due process claim does not necessarily suffice to show irreparable injury. But it cannot convincingly distinguish the (binding) holding of *Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009), that "the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 1312 (quotation marks omitted). The Government (at 19) observes that *Mills* involved violations of the Fourth Amendment, rather than the Fifth Amendment Due Process Clause, and characterizes its irreparable-harm analysis as "turn[ing] on the D.C. government's specific actions in implementing a vehicle checkpoint program." In fact, the D.C. Circuit's analysis placed no weight at all on the specific constitutional provision at issue, and nowhere suggests that its rule might apply differently to some constitutional rights than others. *See Mills*, 571 F.3d at 1312. The court discussed the specific facts of the case—which made "apparent that [the plaintiffs'] constitutional rights are violated"—only to emphasize that the plaintiffs had established a likelihood of success on the merits of their constitutional claim.

Indeed, every decision within the D.C. Circuit to apply *Mills* has followed its irreparable-injury analysis regardless of the constitutional right at issue. *See, e.g.*, *Southern Poverty Law Ctr.*, 2020 WL 3265533, at *32 (Fifth Amendment substantive due process); *Costa*, 464 F. Supp. 3d at 155-56 (same); *Jacinto-Castanon de Nolasco v. ICE*, 319 F. Supp. 3d 491, 504 (D.D.C. 2018) (same); *M.G.U. v. Nielsen*, 325 F. Supp. 3d 111, 123 (D.D.C. 2018) (same). *See also, e.g.*, *Zukerman v. USPS*, 567 F. Supp. 3d 161, 177 (D.D.C. 2021) (First Amendment); *Karem v. Trump*, 404 F. Supp. 3d 203, 217 (D.D.C. 2019) (First Amendment); *Proctor v. Dist. of Columbia*, 100 F. Supp. 3d 107, 116 (D.D.C. 2018) (Fourth Amendment); *Grace v. Dist. of Columbia*, 187 F. Supp. 3d 124, 149 (D.D.C. 2016) (Second Amendment); *Klayman v. Obama*,

142 F. Supp. 3d 172, 195 (D.D.C. 2015) (Fourth Amendment); *DynaLantic Corp. v. DOD*, 885 F. Supp. 2d 237, 292 (D.D.C. 2012) (Fifth Amendment equal protection clause); 11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 (2d ed. 2004) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Government provides no reason why this Court should not do the same.

Moreover, while inflicting an irreparable injury as a matter of law, the violation of Khalid's substantive due process rights also has on-the-ground harmful effects on Khalid and his family. As explained in the Motion for Preliminary Injunction (at 13-15), if the Government does not facilitate his return to the United States, Khalid risks losing his job. He is certain to miss time with his young family, including his infant son, and incur substantial additional cost in travel. And, absent Government facilitation, disclosure of Khalid's No Fly List status could expose him to detention, abuse, and even torture at the hands of foreign authorities.

### B. Granting injunctive relief is in the public interest and the balance of the equities tips in Plaintiff's favor.

Vindicating Khalid's fundamental liberty interest in interstate and international travel is in the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[U]pholding constitutional rights surely serves the public interest.").

The Government cannot explain why barring Khalid—a young father who endured a seven-day journey around the world to witness the birth of his son—from flying into or over U.S. airspace in returning to his country of citizenship before the end of his paternity leave serves the public interest. The Government (at 21-24) resorts to alarmism, protesting that its interest in preventing the "use of a commercial aircraft as an instrument of mass murder"

11

would be threatened if they allowed Khalid to fly from Pakistan to the United States. But, as already discussed in Section I.B, the Government's argument is long on inflammatory rhetoric and short on specifics. The Government (at 23) offers only sinister insinuations about "unacceptable risk[s] to transportation security" to justify its good-for-one-ride-only facilitation policy. At base, the Government asks this Court to accept at face value its conclusory assertion that Khalid's second facilitated flight would be unacceptably dangerous, even though his first flight, apparently, was not. But the Government offers no evidence at all (besides unsupported declarations) to substantiate that allegation and, in the absence of evidence, the Government's argument should be rejected.

## RELIEF REQUESTED

The Court should grant a temporary restraining order, or in the alternative a preliminary injunction, enjoining Defendants to select a flight or flights that allow Mr. Khalid to arrive in the United States before October 10th.

| | |
|---|---|
| Respectfully Submitted, | CAIR LEGAL DEFENSE FUND |
| | BY:   **/s/ Lena F. Masri**<br>LENA F. MASRI (DC 100019)<br>GADEIR I. ABBAS (VA 81161) β<br>JUSTIN SADOWSKY (DC 977642)<br>ZANAH GHALAWANJI (MI P 83116) ç<br>HANNAH MULLEN (DC 1725228)*<br>453 New Jersey Ave, SE<br>Washington, DC 20003<br>Phone: (202) 742-6420<br>Fax: (202) 379-3317<br>Email: LDF@CAIR.com |
| | *Attorneys for Plaintiff*<br>*β Licensed in VA, not in DC. Practice limited to federal matters.*<br>*ç Licensed in MI, not in DC. Practice limited to federal matters.*<br>*\*Application for admission to this Court pending.* |

Dated:    September 21, 2022