UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAAD BIN KHALID**, <br><br> Plaintiff, <br><br> v. <br><br> **MERRICK GARLAND,** *et al.*, <br><br> Defendants. | Case No. 21-cv-2307 (CRC) |

### MEMORANDUM OPINION

The U.S. government maintains a watchlist of known or suspected terrorists called the Terrorist Screening Database. Individuals on the watchlist are designated on one of three sublists: (1) the Selectee List, (2) the Expanded Selectee List, or (3) the No Fly List. Those on either of the "selectee" lists are subject to enhanced screening before flying. Those on the No Fly List may not travel at all on U.S. commercial carriers or over U.S. airspace. Federal agencies across the government have access to the lists.

Plaintiff Saad Bin Khalid is on the No Fly List. In 2021, Khalid filed suit in this Court challenging his inclusion on both the No Fly List and the broader watchlist. The Court dismissed Khalid's No Fly List claims for lack of subject-matter jurisdiction because only a court of appeals has the authority to review his status on that list. See Busic v. Transp. Sec. Admin., 62 F.4th 547, 549 (D.C. Cir. 2023); 49 U.S.C § 46110. The Court allowed two of his broader watchlist-based claims to proceed, however. The government now moves to dismiss those claims too.

Khalid maintains that his inclusion on the watchlist has disrupted and delayed his travel and held up a visa application he submitted on behalf of his wife in Pakistan. But those harms also stem from being on the No Fly List, which the Court is powerless to change, and would

remain as long as he stays on that list. So, whatever the merits of Khalid's residual watchlist claims, no order in his favor would redress his alleged injuries. Khalid therefore lacks standing, and the Court must grant the government's motion and dismiss the case.

I.  **Background**

The Court fully recounted the applicable regulatory framework in its Opinion and Order granting in part and denying in part the government's first motion to dismiss. See Op. & Order, ECF No. 32, at 2–5. The following discussion will therefore summarize the previous factual background as well as subsequent developments in the case. As the Court is again resolving a motion to dismiss for lack of subject-matter jurisdiction, it will consider the amended complaint along with undisputed facts in the record. See id. at 2 n.1 (citing Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003)).

Saad Bin Khalid is a U.S. citizen of Pakistani descent. Am. Compl. ¶ 2. In July 2019, after he was denied boarding a plane from Karachi, Pakistan to the United States, Khalid filed a complaint with the Department of Homeland Security's Travelers Redress Inquiry Program ("DHS TRIP"). Id. ¶¶ 81–94, 110. A No Fly List designation is one of three possible watchlist designations, alongside the Selectee List and Expanded Selectee List. Id. ¶ 44. Only individuals with a No Fly List designation are prohibited from traveling through U.S. airspace, but inclusion on the watchlist in any category subjects the individual to additional screening procedures and allows their status to be shared across government agencies. See id. ¶¶ 46–47. In April 2020, Khalid received notification from DHS TRIP confirming that he was on the No Fly List. Id. ¶ 111. After DHS failed to respond to his request for further information, Khalid filed this suit in August 2021. But before the government responded substantively to the suit, in June 2022, Khalid's No Fly List designation was affirmed by the Administrator of the Transportation

2

Security Administration ("TSA") in a Notice of Final Order and Decision.  Id. ¶ 140.  Khalid then filed an amended complaint seeking removal from both lists, a declaratory judgment that his inclusion is unlawful, an injunction against being relisted based on the same evidence supporting his existing status, and a legal mechanism that affords him notice and a meaningful opportunity to contest his continued inclusion on the lists.  Id. at 39–40.

The government moved to dismiss based on 49 U.S.C. § 46110.  Section 46110(a) provides that "a person disclosing a substantial interest in an order issued by . . . the Administrator of the [TSA] . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."  Section 46110(c) then provides that "the court"—meaning the court of appeals where the petition is filed—has "exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order."  The government contended then, as it does now, that this Court lacks jurisdiction to grant Khalid his requested relief because it would require altering the TSA Administrator's 2022 No Fly List order, which only a circuit court may do.  Op. & Order, ECF No. 32, at 5.  While that motion was pending, Khalid petitioned this Court for a preliminary injunction allowing him to board a plane so that he could return to the United States after traveling to Pakistan for the birth of his son.  See Mot. Prelim. Inj., ECF No. 22, at 4–5.  The Court denied that motion, finding that it likely lacked jurisdiction to waive Khalid's inclusion on the No Fly List, even temporarily, and therefore success on the merits was improbable.  Order, ECF No. 30, at 1–2.

In due course, the Court granted the government's motion to dismiss in part and denied it in part, confirming that it lacked subject-matter jurisdiction over Khalid's No Fly List claims.

Op. & Order, ECF No. 32, at 13–14. As to Khalid's watchlist-only claims, the Court found that both his claim based on a constitutional right to travel and a claim under the Religious Freedom Restoration Act depended on a bar to travel that the watchlist alone did not impose, id. at 10, 13, but left to further briefing whether the amended complaint adequately pleads a stigma-plus-based due process claim and whether there was an adequate alternative remedy for Khalid to challenge his watchlist status that would preclude review of his claim under the Administrative Procedure Act, id. at 13–14. At Khalid's request, the Court subsequently transferred the dismissed No Fly List claims to the D.C. Circuit, where they currently remain pending. Op. & Order, ECF No. 39, at 7; see also Khalid v. Transp. Sec. Admin., No. 23-1150 (D.C. Cir. appeal docketed June 6, 2023).

The parties have since briefed the government's renewed motion to dismiss Khalid's watchlist-only claims, to which the Court now turns.

## II. Legal Standards

The government moves to dismiss the amended complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). "[T]he defect of standing is a defect of subject matter jurisdiction." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). To survive a motion to dismiss based on lack of standing, a plaintiff "must state a plausible claim that [he has] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting Humane Soc'y of the United States v. Vilsack, 797 F.3d 4, 8 (D.C. Cir. 2015)). "A Court must accept all the non-movant's factual allegations as true when reviewing a motion to dismiss under Rule 12(b)(1), but such allegations will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a [Rule] 12(b)(6) motion for

4

failure to state a claim." Brady Campaign to Prevent Gun Violence United with the Million Mom March v. Ashcroft, 339 F. Supp. 2d 68, 72–73 (D.D.C. 2004) (cleaned up). If the Court "concludes that it lacks subject-matter jurisdiction, [it] must dismiss the complaint in its entirety." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

The government also moved to dismiss for failure to state a claim under Rule 12(b)(6). Because the Court will dismiss the case for lack of jurisdiction, it need not recite the 12(b)(6) standards.

### III. Analysis

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Its "irreducible constitutional minimum" consists of "three elements: '(1) injury-in-fact, (2) causation, and (3) redressability.'" Am. Freedom L. Ctr. v. Obama, 821 F.3d 44, 48 (D.C. Cir. 2016) (quoting Lujan, 504 U.S. at 560). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The government contends that Khalid does not have standing to maintain his watchlist claims because the injuries he complains of are constitutionally insufficient, are caused by his No Fly List designation rather than his watchlist status, and are unlikely to be redressed by a favorable decision so long as he remains on the No Fly List. Defs.' 2d Mot. Dismiss at 10–14, 29–32. To the extent Khalid challenges the procedures afforded to listees who are not on the No Fly List, the government maintains that he lacks standing because the procedures do not apply to him. Id. at 1, 13. Though Khalid has alleged a cognizable injury, because the Court cannot redress it, it will dismiss the complaint, and the case, for lack of subject-matter jurisdiction.

5

A. <u>Injury</u>

Khalid identifies two injuries that he contends stem from his watchlist status: (1) he is excessively burdened in traveling across U.S. borders and (2) his wife's immigration visa has been and will continue to be indefinitely delayed. Pl.'s Opp'n, ECF No. 45, at 2–4. To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." <u>Id.</u> at 560 n.1. Because Khalid seeks injunctive relief, he must plead future injury, meaning the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158 (2014) (quoting <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 414 n.5 (2013)). The Court addresses each claimed injury in turn.

   1. *Excessive Screening & Travel Delays*

To support his claim of excessive screening and delayed travel, Khalid, in his opposition brief, points to a declaration he submitted alongside his motion for a preliminary injunction which described a March 2022 trip from Pakistan to the United States. Khalid recounts that the government granted him "special clearance" on that occasion to return to the United States from Pakistan despite his No Fly List designation. Decl. of Saad Bin Khalid ("Khalid Decl."), ECF No. 22-4, ¶¶ 5–6. However, upon his arrival in New York City, he was "detained and interrogated for 5-6 hours" and the government "took [his] devices and searched them, demanding [his] passwords in the process." <u>Id.</u> Khalid contends that because he is an American businessman with a wife and family in Pakistan, "it is certain that [he] will in the future interact with the United States border" and experience the same harms, therefore giving rise to an

6

imminent and concrete injury. Pl.'s Opp'n at 3. Though not for the reasons the government offers, the Court disagrees.

Responding to this asserted injury, the government first urges the Court to ignore Khalid's account of his March 2022 trip because it is absent from the amended complaint. Defs.' Reply, ECF No. 47, at 4; see also Pl.'s Opp'n at 2–3 (citing declarations attached to Khalid's motion for a preliminary injunction). But "[i]n determining standing, [the Court] may consider materials outside of the complaint." Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015) (citation omitted). And "a petitioner whose standing is not self[-]evident should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding." Sierra Club v. EPA, 292 F.3d 895, 900 (D.C. Cir. 2002). As the D.C. Circuit has recognized, "[i]n some cases that will be in response to a motion to dismiss for want of standing" where the petitioner may "cit[e] any record evidence relevant to its claim of standing and, if necessary, append[] to its filing additional affidavits or other evidence sufficient to support its claim." Id. at 900–01. Accordingly, the Court may consider Khalid's citations to his previously submitted declarations in addition to his amended complaint allegations.

The government next suggests that additional airport screening and delay are constitutionally insufficient to satisfy the injury-in-fact requirement. Defs.' Reply at 6. The government supports this contention by stating that "every circuit court across the country to consider the issue has held that there is no liberty interest in delay-free travel." Id. at 11–12 (collecting cases). But all the government's cases involve merits determinations. Injury in fact presents a different question. And the D.C. Circuit has held that a "history of traveling [internationally] every two years to visit family, combined with [a] professed desire to continue

7

that pattern[]" and "the reasonable inference [the plaintiffs would] remain on the Selectee List . . . adequately allege[s] an imminent threat of future injury[.]" Jibril v. Mayorkas, 20 F.4th 804, 814–17 (D.C. Cir. 2021).  Khalid alleges that he has a continuing need to travel internationally to be with his family in Pakistan and for his professional responsibilities and he presents evidence of harm in undertaking these travel obligations.  Pl.'s Opp'n at 3; see also Am. Compl. ¶¶ 12, 65 (alleging that Khalid's wife and daughter are Pakistani citizens and that he would like to visit Pakistan); id. ¶¶ 101, 103 (alleging that Khalid's employer tasks him with projects requiring international travel); Khalid Decl. ¶ 6 (describing his detention at the airport for 5-6 hours).  For someone on the watchlist without a No-Fly designation, like the plaintiffs in Jibril, this may well meet the requirements for imminent injury.  But in addition to being on the watchlist, Khalid is on the No Fly List, which defeats his claim to standing based on these asserted harms.

Given Khalid's absolute bar on traveling to and from U.S. airports, travel delays and excessive airport screening are not sufficiently likely to recur due to his watchlist placement.  While Khalid's declaration states that he has experienced this harm in the past despite his No-Fly status due to a waiver from the government, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983).  There is nothing in the record to support a plausible finding that Khalid will once again receive a one-time waiver of his absolute domestic travel prohibition.  In fact, the government has since declined to facilitate his movement in and out of the country, Khalid Decl. ¶ 8, and maintains that Khalid's practice of traveling outside of the United States despite being on the No Fly List "weigh[s] strongly against facilitating his requested travel" in the future.  Decl. of Michael Turner, ECF No. 25-1, ¶ 28.  Accordingly,

8

excessive travel screening is not an actual or imminent injury that supports Khalid's claim of standing.

### 2. Visa Delays

Next, Khalid claims that his wife's immigration visa has been indefinitely delayed and that his children's future visas will be as well due to his placement on the watchlist. Am. Compl. ¶¶ 143–44; see also Pl.'s Opp'n at 4. When Khalid filed the amended complaint in June 2022, his I-130 spousal visa petition, filed on behalf of his wife, had been pending for nearly three years, but the couple had only recently received confirmation from the State Department's National Visa Center ("NVC") that the case was "documentarily qualified." Am. Compl. ¶ 143.

The government first disputes that this injury is sufficiently personal to Khalid to support standing. Defs.' Reply at 6. While it is true that a U.S. citizen "has no constitutional right which is violated by the deportation" of his spouse, Swartz v. Rogers, 254 F.2d 338, 339 (D.C. Cir. 1958), and that "standing is not dispensed in gross," Town of Chester, N.Y. v. Laroe Estates, Inc., 581 U.S. 433, 439 (2017), Khalid alleges that *he* submitted an application, of which his wife is merely the beneficiary, and that *his* application has been unreasonably delayed due to allegedly unlawful government action. Am. Compl. ¶ 143. He further alleges that he remains separated from his wife and children due to the government's delay in processing his application on his wife's behalf. Id. ¶¶ 7, 65, 97, 143. Courts routinely find that plaintiffs whose immigration petitions have been unreasonably delayed have asserted a sufficient injury for standing purposes. See, e.g., Pourabdollah v. Blinken, No. 23-cv-1603 (DLF), 2024 WL 474523, at *3 (D.D.C. Feb. 7, 2024) (finding that the plaintiffs "satisfactorily alleged that they suffered a concrete injury" because "a delay in visa processing amounts to a 'procedural right'" and "separation from [] family" amounts to a "concrete harm") (citing TransUnion LLC v.

9

Ramirez, 141 S. Ct. 2190, 2204 (2021); Trump v. Hawaii, 138 S. Ct. 2392, 2416 (2018) (recognizing "that a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact")). This is true even where the beneficiary differs from the plaintiff. See, e.g., Dehkordi v. Bitter, No. 22-cv-2470 (RJL), 2023 WL 5651845, at *2–3 (D.D.C. Aug. 31, 2023) (finding a "legally cognizable injury" where the plaintiff alleged unreasonable delay in the government's adjudication of a petition she submitted on behalf of her mother); accord Varghese v. Blinken, No. 21-cv-2597 (CRC), 2022 WL 3016741, at *4 (D.D.C. July 29, 2022) (evaluating an I-130 petitioner's "claim that the government's delay in processing his wife's visa application violates the APA and Mandamus Act" on the merits).

The government next contends that any delay in Khalid's wife's visa process has been reasonable and "had ended as of the filing of the amended complaint" because she had been found "documentarily qualified," and was awaiting an interview. Defs.' Reply at 8 (quoting Am. Compl. ¶ 7). But subject-matter jurisdiction does not depend on whether a delay is in fact unreasonable or whether there has been interim progress on the petition. Cf. Dehkordi, 2023 WL 5651845, at *2–3 (finding that the plaintiff had standing despite the fact that the beneficiary of the plaintiff's petition was recently cleared to begin the application process with the NVC). While it may or may not be true that final adjudication of the visa will be indefinitely delayed because of Khalid's watchlist status, the Court finds that the amended complaint pleads a substantial risk of this possibility, particularly given that, on the government's own admission, the State Department is one of "[t]he largest end users" of the watchlist for the express purpose of "visa and passport screening." Decl. of Samuel P. Robinson, Ex. A, Overview of the U.S.

Government's Watchlisting Process and Procedures as of September 2020, at 5. Accordingly, the alleged visa delay is a sufficient injury for standing purposes.

    B. Causation

Stopping briefly at causation, the amended complaint must plausibly allege that Khalid's injury is "fairly traceable to the challenged conduct of the defendant[s]." Spokeo, 578 U.S. at 338. In making that determination, "it may be enough that the defendant's conduct is one among multiple causes" of the asserted harm. Orangeburg, S.C. v. Fed. Energy Regul. Comm'n, 862 F.3d 1071, 1080 (D.C. Cir. 2017) (citation omitted). The problem here, however, is that it may be impossible to disentangle the effect that Khalid's inclusion on the watchlist has had on his spousal visa application from that of his designation on the No Fly List in particular. And this difficulty identifying the precise cause of Khalid's alleged injury points to the more fundamental standing problem here: redressability.

    C. Redressability

"Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (en banc). Here, Khalid seeks removal from the watchlist. But the Court cannot remove Khalid from the watchlist without modifying an order of the TSA Administrator—an action which it lacks jurisdiction to take. As Khalid acknowledges, the "No Fly List" is an "annotation" on the watchlist, Am. Compl. ¶ 43, meaning it does not exist independently and the Court cannot order removal from the watchlist without also effectively ordering removal from the No Fly List. Moreover, without removal from the No Fly List, Khalid's asserted injury cannot be redressed. And "[b]ecause redressability is an 'irreducible' component of standing, no federal court has jurisdiction to enter a judgment unless

it provides a remedy that can redress the plaintiff's injury." Uzuegbunam v. Preczewski, 592 U.S. 279, 141 S. Ct. 792, 801 (2021) (quoting Spokeo, 578 U.S. at 338). Therefore, Khalid lacks standing, and the Court must dismiss the case.

Khalid's resistance to this conclusion is unavailing. He first contends that the Court can prohibit the Terrorist Screening Center ("TSC"), which maintains the list, "from disseminating watchlist status to other agencies or private individuals, except TSA and airlines as necessary to enforce the No Fly annotation." Pl.'s Opp'n at 7. But the Court cannot order this generally applicable relief on Khalid's as-applied challenge. And though an order preventing TSC from disseminating Khalid's watchlist status to the State Department may appear to redress his particular injury, the alleged delay in visa processing springs just as forcefully, if not more, from his unalterable placement on the No Fly List. See Am. Compl. ¶ 143 (noting that the purported delays in this process come "as a result of his status on the [watchlist] *and* No Fly List" (emphasis added)); see also id. ¶ 7 (attributing this delay to only the No Fly List). The Court cannot enter an order prohibiting TSC from disseminating the No Fly List because it lacks jurisdiction to determine whether Khalid is properly included in it. And as long as TSC retains the authority to disseminate the No Fly List, the Court cannot redress any alleged delays in Khalid's visa application by prohibiting distribution of his watchlist status.

Khalid nonetheless insists that the Court can order changes to the current operation of the watchlist if it finds that it cannot remove him without modifying an order of the TSA Administrator. See Pl.'s Opp'n at 6–7. He first appears to suggest ordering TSC to remove him from the watchlist while somehow maintaining his No Fly List designation. Id. at 6. But even if the Court could order the government to segregate the No Fly List from the other two components of the watchlist, so that an individual could be removed from the watchlist alone,

such a remedy would not redress Khalid's supposed injuries because his No Fly List status could still be shared. He next suggests that the Court "simply order changes to the process for placement or removal of individuals on the watchlist." Id. at 7. But Khalid has not been injured by any claimed procedural defects in the process of placing or removing individuals from the watchlist in the absence of a No-Fly designation. As he alleges, "[t]he redress policy which governs No Fly List annotations . . . does not apply to any other [] Listees, including those who remain on the [watchlist] although their No Fly List annotation has been removed." Am. Compl. ¶ 51. In other words, should Khalid be removed from the No Fly List, he will be subject to an entirely different set of procedures. A preemptive proclamation on the constitutional adequacy of those procedures would be no more than an advisory opinion, and any order altering the watchlist-only procedure would fail to redress Khalid's current injuries as a No Fly List designee. Because Khalid's continued No Fly List designation prevents the Court from redressing any of his claimed injuries, Khalid lacks standing and the Court must dismiss the case.

## IV. Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order will follow.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: March 27, 2024